UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 15CV5359

Tiquan Davis AKA Terell J. Davis-Bey

_____

_(In the space above enter the full name(s) of the plaintiff(s).)_

-against-

Angela Jackson (corrections Officer)
Individual and official capacity; "John Doe"
Donahue (corrections Lieutenant),
"John Doe" George (corrections Lieutenant)
Both being sued in their individual and
official Capacity; binah Shibah (correctio-
nal sgt) Being sued in the official and
Individual Capacity; Sgt Jane Doe O'cana,
CO Raymond L.Ortiz, sued in individual and
official capacity

_(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)_

**COMPLAINT**
under the
Civil Rights Act, 42 U.S.C. § 1983
(Prisoner Complaint)

Jury Trial:  ☑ Yes   ☑ No
(check one)



**I.   Parties in this complaint:**

A.   List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff   Name  Tiquan Davis AKA Terell J. Davis-Bey
            ID #  95A0305
            Current Institution  Sing Sing
            Address  354 Hunter St. Ossining NY 10562

B.   List all defendants' names, positions, places of employment, and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1   Name  CO Angela Jackson                Shield #  U/k
                  Where Currently Employed  Sing Sing Correctional
                  Address  354 Hunter St. Ossining N.Y. 10562

_Rev. 05/2010_

1

Defendant No. 2        Name Lt. "John Doe" Donahue          Shield # U/k
                       Where Currently Employed Southport Correctional
                       Address P.O. Box 2000 Pine City N.Y. 14871

Defendant No. 3        Name Lt. "John Doe" George           Shield # U/k
                       Where Currently Employed      Sing Sing
                       Address 354 Hunter st. Ossining N.Y. 10562

Defendant No. 4        Name Sgt. Ginah Shibah              Shield # U/k
                       Where Currently Employed Sing Sing
                       Address 354 Hunter st. Ossining N.Y. 10562

Defendant No. 5        Name Sgt. "Jane Doe" O'Cana         Shield # U/k
                       Where Currently Employed Sing Sing
                       Address 354 Hunter st Ossining N.Y. 10562
                                                          See Attached.

## II.    Statement of Claim:

State as briefly as possible the facts of your case.    Describe how each of the defendants named in the
caption of this complaint is involved in this action, along with the dates and locations of all relevant events.
You may wish to include further details such as the names of other persons involved in the events giving
rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims,
number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.    In what institution did the events giving rise to your claim(s) occur?

Sing Sing; Southport

B.    Where in the institution did the events giving rise to your claim(s) occur?

Sing Sing HBA-A block; Sing Sing disciplinary; Southport Hearing office

C.    What date and approximate time did the events giving rise to your claim(s) occur?

Claim as for Lt George occured on 11/18/11. Claim as for
C.O. A. Jackson and Lt Donahue occured on 9/18/11 and
3/7/12

D.   Facts: _____ *See Attached* _____

> **What happened to you?**

_____ *See Attached* _____

> **Who did what?**

_____ *See Attached* _____

> **Was anyone else involved?**

_____ *See Attached* _____

> **Who else saw what happened?**

III.   **Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____

_____ *Due process violation; Atypical hardship* _____

IV.   **Exhaustion of Administrative Remedies:**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes ✓ No ____

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s). _Sing Sing and Southport Correctional facilities_

_____

B.   Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

     Yes _✓_   No ____   Do Not Know ____

C.   Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

     Yes _✓_   No ____   Do Not Know ____

     If YES, which claim(s)? _All_____

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

     Yes _✓_   No ____

     If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

     Yes ____   No ____

E.   If you did file a grievance, about the events described in this complaint, where did you file the grievance? _Plaintif exhausted his claims by filing an administrative appeal_

     1.   Which claim(s) in this complaint did you grieve? _____
          _All_____

     2.   What was the result, if any? _See Attached_____

          _____

     3.   What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process. _Since the claims involve a_
          _disciplinary due process violation plaintif filed an administr-_
          _ative appeal with the Director of Special Housing_
          _____
          _____

F.   If you did not file a grievance:

     1.   If there are any reasons why you did not file a grievance, state them here: _Because_
          _the claims are in relation to the disciplinary_
          _hearing process which has a different exhaustion_
          _procedure, to w.t, the plaintif followed_
          _____

     2.   If you did not file a grievance but informed an officials of your claim, state who you informed,

when and how, and their response, if any: _____
_____
_____
_____
_____

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative
      remedies. _____
_____
_____
_____
_____
_____
_____

<u>Note</u>:   You may attach as exhibits to this complaint any documents related to the exhaustion of your
       administrative remedies.

V.     Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you
are seeking and the basis for such amount). Plaintiff request punitive compensation
for the 30 Months of special housing which was an Atypical hardship;
Plaintiff request that both disciplinary hearing be reversed and
expunged from his institutional records; Plaintiff request an Injunction
that he not be retaliated against or transfered from the facility that
he's in right now. That this court find that plaintiff's due process
was violated. That he be compensated in the amount of $250,000.00
(Twohundredfiftythousand dollars) for the time spent in SHU. That
he be compensated monertary in the amount of $250,000.00
(Twohundredfiftythousand dollars) for the punitive damages for
the knowing and intelligent violation of plaintiff's due process;
That he be reimbursed for the amount paid to file this application
including copies and lawyer fees; That this court find that 30 months
SHU was an Atypical hardship. That all the hearing tape be listened
to by this Court; That plaintiff not be subjected to Urine test until completion
of law suit;

VI.    Previous lawsuits:

┌─────────┐
│ On      │        A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this
│ these   │              action?
│ claims  │
└─────────┘              Yes ____   No ✓___

*Rev. 05/2010*                              5

B.     If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below.  (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.     Parties to the previous lawsuit:

Plaintiff    Tiquan Davis

Defendants    State of New York

2.     Court (if federal court, name the district; if state court, name the county) Dutchess

3.     Docket or Index number    Cant remember

4.     Name of Judge assigned to your case    Scucermara

5.     Approximate date of filing lawsuit    2001 or 2002 not sure

6.     Is the case still pending?  Yes _____  No ✔
       If NO, give the approximate date of disposition    Cant Remember

7.     What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?)    dismissed

---

[On other claims]

C.     Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?
       Yes ✔   No _____

D.     If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.     Parties to the previous lawsuit:

Plaintiff    Tiquan Davis AKA Terell J. Davis-Bey

Defendants    State of New York

2.     Court (if federal court, name the district; if state court, name the county) Westchester

3.     Docket or Index number    #11087

4.     Name of Judge assigned to your case    Scuccimara

5.     Approximate date of filing lawsuit    2008 cant remember exact date

6.     Is the case still pending?  Yes _____  No ✔
       If NO, give the approximate date of disposition    2012 cant remember exact date

7.     What was the result of the case?  (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?)    Settlement for 13,000

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 29 day of ___June___, 2015.

Signature of Plaintiff _____

Inmate Number     95A0305

Institution Address   354 Hunter st

Ossining NY 10562

_____

_____

**Note**:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this 29 day of ___June___, 2015, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _____

Defendants Continued

Defendant #6. Raymond L. Ortiz (C.O. Ortiz)
Employed: Sing Sing Correctional facility. Shield # U/K
354 Hunter St. Ossining NY. 10562

Statement of facts

1. On 9/18/11 C.O. Bonner gave the plaintif authorization to make rounds on R & W company in HBA-block. While plaintif was making I.L.C rounds on R company C.O. Angela Jackson (C.O. A. Jackson) told plaintif to show her his hands, to wit, plaintif complied. C.O. A. Jackson then told plaintif to put his hands on the gate for a pat frisk, to wit, plaintif complied. During that time C.O. Bonner yelled up to C.O. A. Jackson "leave Davis alone". C.O. A. Jackson the responded saying "tell him to get the fuck off my company". As the plaintif turned to leave the company C.O. A. Jackson grabbed him by his sweater forcefully and yelled "what's all of that you just dropped on the floor". Plaintif in an attempt to stop this C.O from grabbing him so roughly, grabbed C.O. A. Jackson's hands and told her to stop playing. At that time C.O's Sandiford and Grant grabbed the plaintif from behind and took him to the ground without resistance. While plaintif was being handcuffed, Sgt. Gina Shibah (Sgt. G. Shibah) who was the area supervisor arrived and told C.O. Garcia to take plaintif to the shower on Q-company. Sgt. G. Shibah then told C.O. Garcia to take the plaintif to the hospital for a use of force examination. While in the hospital the plaintif met with Sgt Williams who was plaintif's I.L.C staff advisor. Sgt. Williams stated to plaintif " How the hell did you let a chick like Jackson catch you with weed". Plaintif at first thought the sgt. was joking around, but the sgt. said that he was dead serious and went on to say that C.O. A. Jackson said that plaintif came on the company with a handfull of loose Marijuana. The plaintif told sgt. Williams that he never had any Marijuana on him let alone loose in his hand, when he is required to approach the company C.O. to let them know he's doing I.L.C rounds. Plaintif went on to say that C.O. A. Jackson set him up,

2

and that it all came from when he complained to the Night block sgt that C.O. A. Jackson was preventing plaintif from doing rounds on the company. C.O.A. Jackson was on a few nights prior. Photo's were taking of the plaintif as well as a written statement. Plaintif was then escorted to the disciplinary office and ordered to submit to a urine test, to wit, plaintif tested negative. Plaintif was then escorted to HBC~ S.H.U. While in SHU plaintif recieved a Misbehavior report (M.B.R) Charging him with rule violations: 106.10 (direct order), 115.10 (frisk), 100.11 (assult on staff), 113.25 (drug possession) Which was written by C.O. A. Jackson and authorized by Sgt. G. Shibah on 9/18/11. A tier superinten- dants hearing was conducted by Lt. Pinker. Plaintiff objected to the fact that he ▓▓▓ was denied Sgt. G. Shibah and C.O. C. Benjamin as his witnesses as they were both part of the M.B.R. ▓▓▓▓ Plaintif was found guilty of all charges except for rule 115.10 (frisk). Plaintif was issued a penalty of 24 months SHU, 24 months loss of all other privileges including recommended loss of good time.

## II

2. On 10/25/11 While in SHU C.O. R.L. Ortiz (C.O. Ortiz) approached the cell plaintif was in and stated "Are you ready", plaintif stated "no". C.O. Ortiz then stated "You wanna play games so now i'm gonna play games". C.O. Ortiz then told another C.O. to turn off the water in Davis's cell. C.O. Ortiz then stated to plaintif "i'm gonna play games this time, let's see you get around this one". He also stated "remember the time you pissed in the bullpen, remember when you wrote my boy perez up, we ain't forget that". C.O. Ortiz then ordered plaintif to pee in 2 seperate bottles, one C.O. Ortiz placed in his top pocket, the other bottle was placed in a cup with a lid on it. As C.O. Ortiz was leaving, he stated "Now i'm gonna show you how to play games". All of this was recorded on the SHU audio/video system. A few hours later an SHU C.O. told plaintif that his urine tested positive for drugs. As a result of this, plaintif recieved a M.B.R written by C.O. Ortiz

3

Plaintif Was provided with Sgt. O'cana as his tier assistance. The plaintif requested that Sgt. O'cana View the S.H.U Video/audio from HBC 2 gallery from 11:45 am to 1:26 pm of 10/20/11 and to report the results back to him. Plaintif informed Sgt. O'cana that he Wanted the audio/video tape as evidence at his hearing so that he could prove everything CO. Ortiz did and Said during the Urine collection process, as CO Ortiz is proven by a court of law to lie and tamper with the urine collection process. See exhibit(A). Sgt. O'cana never viewed the video/audio tape. A tier 3 hearing Was conducted. Lt. George was the hearing officer. Lt. George Was the person who approved the Urine test. Both Lt. George and CO. Ortiz Work in the disciplinary office together. At the tier hearing plaintif requested the S.H.U Video/audio tape, his urologist, his kidney specialist, the nurse administrator and Mental health unit cheif who both provided e-mails prior to the hearing, the drug testing manual amongst other things. The hearing officer denied all of these request. Plaintif Objected to these denials. Plaintif Was found guilty and issued 24 Months SHU, 24 Months loss of all other privileges including recommended loss of good time. In december 2011 plaintif was transfered from Sing Sing S.H.U to southport SHU with a total of 48 months SHU, 48 Months loss of all other privileges including recommended loss of good time. Plaintif filed an administrative appeal Challenging both tier 3 hearings.

3.  On 2/8/12 The Director of special housing Modified the penalty imposed for the M.B.R Written by CO. Ortiz and tier hearing therefrom (113.24) from ) 24 Months SHU to 18 months but kept the remaining penalties in place

4

4. On 2/7/12 The Director of Special housing reversed the hearing held for the MBR written on 9/18/11 due to 2 material staff witnesses being denied but ordered a rehearing.

5. The rehearing was conducted by Lt. Donahue and was concluded on March 7, 2012. Plaintif was found guilty of all charges including the one he was found not guilty of in the prior hearing (115.10-Frisk). The penalty imposed was also significantly greater. Instead of 24 months SHU the Lt gave plaintif 36 months SHU, 36 months loss of all other privileges.

6. On March 17, 2012 plaintif filed an administrative appeal to the Director of Special housing. Plaintif's SHU time was modified from 36 months back to 24 months.

7. Plaintif filed an article 78 with the Westchester County Supreme Court challenging both tier 3 hearing. A judge of that court denied his petition and petition was appealed the Appellate division Second department. In December 2014 plaintif's appeal was dismissed because plaintif could not afford the filing fee.

8. Plaintif served a total of   30 months SHU and was subjected to an Atypical hardship due to the clear violations of plaintif's due process.

5

9. Defendant #1 ° CO. A. Jackson violated plaintif's due process when she wrote a M.B.R Charging plaintif with 106.10 (Direct order), 115.10 (Frisk), 100.11 (assult on staff), 113.25 (Drug possession).

10. Defendant #2. Lt Donahue violated plaintif's due process when he denied CO Bonner as plaintif's witness, as this CO observed the incident and yelled "leave Davis alone", and may have gave testimony in favor of the plaintif; Refused to recall CO. A. Jackson as a witness so that the contents of the contraband could be verified. Acted as an unfair and bias hearing officer when he gave plaintif a greater penalty then was issued in the prior hearing, found plaintif guilty of a charge he was found not guilty of in the prior hearing 115.10 (frisk); made remarks to the plaintif like: "I dont believe you"; Failed to conduct a Mental Health assesment as required per Directive 4932.

11. Defendant #3. Lt. George violated plaintif's due process when he failed to call plaintif's urology and kidney specialist who would have provided exculpatory medical testimony; failed to call N.A. B. Furko and the Mental Health unit .... Chief who both provided e-mails that plaintif was unable to question them about, but was considered by Lt. George; Deprived plaintif of audio/video evidence which the plaintif would have been able to use to support what happened with CO Ortiz during the urine collection process and also as mitigating evidence; Deprived plaintif of documentary evidence when he was denied the Drug Testing Manual; Acted as an unfair and biased hearing officer when he accused plaintif of "trying to prolong the hearing process" and "trying to sabatage the hearing process".

6

Conducted the hearing despite being the person who approved the cause of the MBR.

12. Defendant #4. Sgt. G. Shibah violated plaintiff's due process when she authorized the MBR Written by CO. A. Jackson, signed the MBR written by CO. A. Jackson, testified that the contraband was inside of a plastic bag.

13. Defendant #5. Sgt. O'cana violated plaintiff's due process when she failed to review the S.H.U. Audio/Video tape

14. Marcel Smith  98-B-1609  Observed the incident

15. The plaintiff's 14th Amendment right to due process was violated

16. The plaintiff's right to be free from an Atypical hardship was violated when he served 30 Months in S.H.U. 28 and 1 half of that done in Southport Correctional facility.

17. The plaintiff did not consent to be placed in S.H.U., and the plaintiff was aware of such wrongful Confinement.

18. Defendant #6. Raymond L. Ortiz violated plaintiff's due process When he wrote plaintiff a M.B.R Charging him with (113.24) Drug use.

## DECISION AND ORDER

To commence the statutory time
period of appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order,
with notice of entry, upon all
parties.

FILED AND ENTERED
ON *April 30*, 1998
WESTCHESTER
COUNTY CLERK

## SUPREME COURT OF THE STATE OF NEW YORK
## IAS PART, WESTCHESTER COUNTY
### Present:   HON. JAMES R. COWHEY
Justice.

-------------------------------------------X
In the Matter of the Application of

                          Petitioner,              Index No. 17991/97

For Judgment under Article 78 of the Civil
Practice Law and Rules,

        -against-

GLENN S. GOORD, Commissioner of the
Department of Correction; CHARLES GREINER,
Superintendent of Sing Sing Correctional
Facility; DONALD SELSKY, Director, Special
Housing Inmate Disciplinary Program;
Officer R.L. ORTIZ, Urinalysis Testing
Officer; Officer A. C. JOHNSON, Family
Reunion Officer; and Lt. HUGHES, Hearing
Officer,

                    Respondent(s).
-------------------------------------------X



        The following papers numbered 1 to 23 were read upon this
petition by petitioner for relief pursuant to Article 78 of the CPLR:

                                              **Papers Numbered**

Verified Petition-Exhibits--------------------------------1-14
Answering Affidavits-Exhibits-----------------------------15-21
Replying Affidavit----------------------------------------22
Exhibit---------------------------------------------------23

        Upon the foregoing papers, it is ordered and adjudged that
this petition is disposed of as follows:

        Following a Tier III Superintendent's hearing at Sing Sing
                                  DISP

Correctional Facility, petitioner was found guilty of violating institutional rule 113.12 which prohibits inmates from possessing or using any narcotic or controlled substance. Said finding was affirmed by administrative appeal on August 11, 1997.

Following a visit in the family reunion program, petitioner was given a drug analysis test which is routine procedure following such a visit. It is uncontroverted that petitioner, who has been in the prison system for at least five years prior to this testing, has been tested over sixty (60) times for drugs, all with negative (clean) results. Petitioner insists that he does not use drugs and that this test which resulted in a positive reading for marijuana was inaccurate and the result of human error.[1] As a result of the guilty determination, the Hearing Officer levied the following penalty: six (6) months loss of good time; ninety (90) days keeplock (sixty (60) days suspended); six (6) months loss of packages, commissary and phones (ninety (90) days suspended). Additionally, petitioner was transferred back to Sing Sing from Tappan and lost participation in the Family Reunion Program for one year.

Upon a careful review of the transcript and documents submitted, the Court finds that the numerous errors committed during the testing process; the conflicting testimony at the hearing by the correction officers involved with the urinalysis testing; the failure to adequately explain the errors and irregularities on the relevant drug testing documents; and the admitted routine use by the correction officers of preprinted xeroxed forms stating that a urine sample was placed into a "lab freezer" before such event occurs, renders the guilty determination by the Hearing Officer in error. Additionally, the Court notes that the embellishing of the correction officers' testimony by the Hearing Officer during the hearing was improper as the Hearing Officer abandoned his role of an impartial arbiter by filling in gaps of the correction officers' testimony, thus violating 7 N.Y.C.R.R. 253.1[b].

---

[1]   The Court notes that petitioner had worked as a facility carpenter at Tappan (Sing Sing's medium security unit) for the past four years and had an excellent disciplinary record as acknowledged by the Hearing Officer. Officer Ortiz performed the test on May 22, 1997 and was certified to perform said testing on May 14, 1997. The record is silent as to Officer Johnson's qualifications and experience.

-2-

A prisoner is entitled to a bona fide evaluation of the evidence
presented at the hearing not an arbitrary decision that reduces the
hearing to a charade (Kelemen v. Coughlin, 128 Misc.2d 190).

   The reports which were filled out by Officers Ortiz and
Johnson and submitted to the Hearing Officer, reports referred to as the
Urinalysis Procedure Form and the Request for Urinalysis Test ("RFUT"),
contained inaccuracies and irregularities. The Hearing Officer appears
to accept the contradictory testimony of Correction Officer Ortiz as
sufficient explanation for the errors and irregularities. The Court
finds Officer Ortiz's testimony incredible. The Urinalysis Procedure
Form states that petitioner's urine sample was removed from the freezer
at 7:56 A.M. However, petitioner concededly did not produce a urine
sample till 10:15 A.M. Ortiz first testified that petitioner's sample
was removed from the freezer at 7:56 and then he changed his testimony.
He then stated that the sample was never in a freezer. He proceeded to
give further contradictory testimony. At one point he stated he made a
mistake as to the reporting of the time; however, he fails to address
why this inaccurate information was never corrected. An isolated
mistake is not necessarily noteworthy; however, when coupled with
numerous conflicting statements and documents that do not match and also
that do not match the testimony, there is a serious problem. On the
chain of custody section of the RFUT form, Ortiz lists the testing time
as 1:30 P.M.; however, the Urinalysis Procedure Form states the time of
the test as 12:56 P.M. and Ortiz testifies at one point that the testing
was done at 12:30 and at another point, Ortiz states the testing was
done at 12:56. In violation of 7 N.Y.C.R.R. 1020.4[5][i], Ortiz
testifies that some of the information on the RFUT Form is preprinted
and xeroxed, such as under the chain of custody section that the sample
is placed in the freezer. When Officer Johnson questions Ortiz as to
the error, Ortiz tells him not to worry about mistakes. Moreover, the
Court is left to speculate as to what happened to the sample if the test
was administered at 12:56 P.M. as Ortiz sometimes claims since Johnson
gave the sample to Ortiz at 10:15 A.M. What happened to the sample
during the intervening time and was the sample placed in the
refrigerator as per 7 N.Y.C.R.R. 1020.4[5][e][ii]?[2]

   [2]  From the papers submitted, the Court cannot ascertain
whether or not the reliability of the test is diminished if the
sample is not refrigerated as per regulations and if the sample at

These were not typographical errors, but in essence, were documents that constituted falsified business record documents that were used as a basis for prosecution and penalty and were in violation of state regulations. The taint on these documents was exacerbated by the conflicting testimony given by the correction officers and the embellishment of the record by the Hearing Officer.

The Court does not question that there is a drug problem in the prisons that must be dealt with firmly. However, the approved drug testing procedures utilized must be carefully followed since serious consequences can result to the prisoner. Additionally, a prisoner is entitled to a fair and impartial hearing conducted by a hearing officer who carefully and objectively reviews the evidence and testimony given. That was not done here.

Accordingly, in light of the above, the findings of the Hearing Officer are annulled and vacated. Respondents are directed to expunge from petitioner's institutional record any reference to the charge, etc. and, if appropriate, to restore petitioner to his former position as a facility carpenter at Tappan and any privileges previously enjoyed and to return any monetary fine paid by petitioner.

Dated:   April **30**   1998
         White Plains, New York

                                    _James R. Cowhey_
                                    JAMES R. COWHEY
                                    J.S.C.

---

issue was not refrigerated for the two hours and 41 minutes interval before the test, if the test was performed at 12:56.

T. Davis 95A0305
Sing Sing Correctional Facility
354 Hunter st
Ossining N.Y. 10562

UNITED STATES POSTAGE
02 1M
000428063    JUL 01 2015
$ 01.42⁰
PITNEY BOWES
MAILED FROM ZIPCODE 10562

Pro Se Intake (Southern Dist)
United States District Court
500 Pearl St
N.Y. N.Y. 10007-1315

RECEIVED
JUL - 7 2015
PRO SE OFFICE

USMS
SDNY

LEGAL MAIL