UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIQUAN DAVIS,

               Plaintiff,

      -v-

CORRECTION OFFICER ANGELA JACKSON,
CORRECTIONS LIEUTENANT JOHN DOE
DONAHUE, CORRECTIONS LIEUTENANT
GEORGE JOHN DOE, CORRECTIONAL SGT.
GINAH SHIBAH, SGT. JANE DOE O'CANA, and
C.O. RAYMOND L. ORTIZ, in their individual and
official capacities,

               Defendants.

Case No. 15-CV-5359 (KMK)

OPINION & ORDER

Appearances:

Tiquan Davis
Ossining, NY
*Pro Se Plaintiff*

Yan Fu, Esq.
New York State Attorney General
New York, NY
*Counsel for Defendants Correction Officer Angela Jackson, Corrections Lieutenant Donahue,
Correctional Sgt. Ginah Shibah, and C.O. Raymond L. Ortiz*

KENNETH M. KARAS, District Judge:

      Tiquan Davis ("Plaintiff"), proceeding pro se, brings this Action against Correction

Officer Angela Jackson ("Jackson"), Correction Officer Raymond Ortiz ("Ortiz"), Sergeant

Ginah Shibah ("Shibah"), Lieutenant "John Doe" Donahue ("Donahue"), Lieutenant "John Doe"

George ("George"), and Sergeant "Jane Doe" O'Cana ("O'Cana"), employees of the New York

State Department of Correction and Community Supervision ("DOCCS"), pursuant to 42 U.S.C.

§ 1983.  (Dkt. No. 2.)[1]  Before the Court is Defendants' Motion to Dismiss or, in the alternative,

Motion for Summary Judgment.  (Dkt. No. 22.)  For the reasons explained herein, Defendants'

Motion To Dismiss is granted without prejudice.

## I.  Background

### A.  Factual Background

The following facts are collected from Plaintiff's Complaint and are, for purposes of this

Motion, accepted as true.

#### 1.  The September 18, 2011 Incident

Plaintiff is an inmate at Sing Sing Correctional Facility ("Sing Sing") and also has been

an inmate at Southport Correctional Facility ("Southport").  (*See* Compl. 1–2 (Dkt. No. 2).)[2]  On

September 18, 2011, Correction Officer Bonner ("Bonner") gave Plaintiff authorization to make

rounds on R&W Company in HBA-block, but, while he was making "I.L.C. rounds" on R

company, Jackson told Plaintiff to show his hands and, after he did so, to put his hands on the

gate for a pat frisk.  (*See id.* at 9.)[3]  At that time, Bonner yelled to Jackson to "leave [Plaintiff]

alone," to which she responded by saying, "tell him to get the fuck off my company."  (*Id.*)

---

[1] A review of the docket reveals that Defendants George and O'Cana have not been served, nor are they represented by the New York State Attorney General.  (Defs.' Mem. of Law in Supp. of Defs.' Mot. To Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem.") 1 n.1 (Dkt. No. 23).)  Thus, these Defendants are not considered movants for purpose of the Motion.

[2] Because the Complaint comprises both a filled-out § 1983 complaint form and a statement of facts, each with its own numbering system, the Court's citations refer to the ECF-generated page numbers in the upper right-hand corner of the document.

[3] The term "I.L.C." likely refers to the Inmate Liaison Committee program.  *See Dolan v. Connolly*, 794 F.3d 290, 292, 294 (2d Cir. 2015) (discussing the inmate liaison committee at another correctional facility and indicating that "the ILC is a group of inmates elected to communicate grievances to officials" (internal quotation marks omitted)); *see also* New York State DOCCS Directive 4002 (July 21, 2015), http://www.doccs.ny.gov/Directives/4002.pdf.

Plaintiff then turned to leave the company, but Jackson grabbed him by his sweater, and yelled, "[w]hat's all that you just dropped on the floor[?]" (*Id.*) Plaintiff, "in an attempt to stop this [correction officer] from grabbing him so roughly," grabbed Jackson's hands and told her to stop playing, at which time Correction Officers Sandiford and Grant grabbed Plaintiff from behind and took him to the ground without resistance. (*Id.*) While Plaintiff was being handcuffed, Shibah, the area supervisor, came and told Garcia to take Plaintiff to the shower on Q-Company and to take him to the hospital for a use of force examination. (*Id.*)

While Plaintiff was in the hospital, he met with his I.L.C. staff advisor, Sergeant Williams ("Williams"), who asked Plaintiff, "[h]ow the hell did you let a chick like Jackson catch you with weed[?]" (*Id.*) Plaintiff at first thought Williams was kidding, but Williams said he was "dead serious," and said that Jackson claimed that Plaintiff came on the company with a handful of loose marijuana. (*Id.*) Plaintiff said he never had any marijuana on him, let alone loose in his hand, and posited that Jackson set him up because he had complained to the night block sergeant that Jackson had been preventing him from doing rounds on the company a few nights before. (*Id.* at 9–10.) Photos were taken of Plaintiff, and he provided a written statement. (*Id.* at 10.) Afterwards, he was taken to the disciplinary office to provide a urine sample, which came back negative for drug use. (*See id.*) Plaintiff was then brought to the HBC-SHU, and, while in the special housing unit (the "SHU"), he received a misbehavior report written by Jackson and authorized by Shibah on September 18, 2011 charging him with several rule violations, which he identifies as "106.10 (direct order), 115.10 (frisk), 100.11 (ass[a]ult on staff), [and] 113.25 (drug possession)." (*Id.*) Thereafter, a tier III superintendent's hearing was conducted by Lieutenant Pinker, at which Plaintiff objected to the fact that he was denied Shibah and Correction Officer C. Benjamin ("Benjamin") as witnesses, since they were both involved in

3

the misbehavior report.  (*Id.*)  Plaintiff was then found guilty of all of the charges except the frisk

charge.  (*Id.*)  Plaintiff was given a penalty of 24 months in the SHU and 24 months' loss of all

other privileges, including recommended loss of good time.

### 2.  The October 20, 2011 Incident

On October 20, 2011, while in the SHU, Ortiz came to Plaintiff's cell and asked, "[a]re

you ready[?]"  (*Id.*)  Plaintiff responded, "no," and Ortiz then said, "you wanna play games[,] so

now [I]'m gonna play games."  (*Id.*)  Ortiz then told another correction officer to turn off the

water in Plaintiff's cell, and Ortiz said, "[I]'m gonna play games this time, let's see you get

around this one," and "remember that time when you pissed in the bullpen[?]  [R]emember when

you wrote my boy [P]erez up[?]  [W]e ain[']t forget that."  (*Id.*)  Ortiz then ordered Plaintiff to

urinate into two separate bottles, one of which Ortiz placed into his top pocket, and the other of

which was placed in a cup with a lid on it.  (*Id.*)  As Ortiz was leaving, he said, "now [I]'m

gonna show you how to play games."  (*Id.*)  Several hours later, Plaintiff received a misbehavior

report written by Ortiz in which it was alleged that Plaintiff tested positive for drugs.  (*Id.*)

### 3.  Disciplinary Hearing Proceedings

In connection with Plaintiff's discipline hearing, Plaintiff was provided with O'Cana to

be his "tier assistance."  (*Id.* at 11.)[4]  Plaintiff asked O'Cana to view the SHU video and audio

from the HBC 2 gallery from October 20, 2011, for the hours of 11:45 AM to 1:26 PM, and to

report the results back to Plaintiff because Plaintiff wanted the footage as evidence at his hearing

---

[4] The Court surmises that O'Cana was assigned to Plaintiff as an assistant in his
disciplinary proceeding.  *Cf.* N.Y. Comp. Codes R. & Regs. tit. 7, § 251-4.1 (providing that "[a]n
inmate shall have the opportunity to pick an employee from an established list of persons who
shall assist the inmate when a misbehavior report has been issued against the inmate if," among
other things, "the inmate is charged with drug use as a result of a urinalysis test").

so that he could "prove everything . . . Ortiz did and said during the urine collection process."
(*Id.*)  Despite Plaintiff's request, O'Cana never viewed the footage.  (*Id.*)

Subsequently, a tier III hearing was held, and George—who, according to Plaintiff, works
in the disciplinary office with Ortiz and who approved Plaintiff's urine test—served as hearing
officer.  (*Id.*)  During the proceedings, Plaintiff requested, but was denied, access to certain
witnesses and materials, including the SHU video and audio footage, his urologist, his kidney
specialist, the nurse administrator the mental health chief unit (who both provided e-mails prior
to the hearing), and the drug-testing manual.  (*Id.*)  Plaintiff was then found guilty and given as
punishment 24 months in the SHU and 24 months' loss of all other privileges, including
recommended loss of good time.  (*Id.*)  In December 2011, Plaintiff was transferred from Sing
Sing to Southport, with a total of 48 months in the SHU and 48 months' loss of all other
privileges, including recommended loss of good time.  (*Id.*)

4.  Plaintiff's Appeal and Rehearing

Plaintiff filed an administrative appeal challenging both proceedings and at least partially
succeeded on each.  (*See id.* at 11–12.)  On February 3, 2012, the Director of Special Housing
(the "Director") modified the penalty imposed for Ortiz's misbehavior report and the hearing that
resulted from it.  (*Id.* at 11.)  In so doing, he reduced the penalty from 24 months' time in the
SHU to 18 months, but kept the remaining penalties in place.  (*Id.*)  Additionally, on February 7,
2012, the Director reversed the hearing for the September 18, 2011 incident due to the absence of
two witnesses and ordered a rehearing, which was conducted by Donahue and concluded on
March 7, 2012.  (*Id.*)  The rehearing was conducted at Southport and concluded on March 7,
2012.  (*Id.* at 12.)  Plaintiff was then found guilty of all four charges, including the frisk charge,
of which he had earlier been found not guilty.  (*Id.*)  Plaintiff was then given 36 months in the

SHU and 36 months' loss of all other privileges, a 12-month increase on both fronts from his earlier penalty.  (*See id.* 10, 12.)

In response to this heightened penalty, Plaintiff filed an administrative appeal to the Director on March 17, 2012, and his SHU time was modified from 36 months back to 24.  (*Id.* at 12.)  Plaintiff then filed an unsuccessful Article 78 proceeding challenging both tier III hearings. (*Id.*)  Plaintiff filed an appeal, but it was dismissed because he could not afford the filing fee. (*Id.* at 12.)  In the end, Plaintiff served a total of 30 months in the SHU.  (*Id.*; *see also* Pl.'s Mem. of Law in Supp. of Pl's Reply ("Pl.'s Opp'n") 3 (Dkt. No. 33) ("After being in solitary confinement for 910 days[,] [P]laintiff was transferred directly back to Sing Sing . . . .").[5]

B.  Procedural Background

On July 7, 2015, Plaintiff filed his Complaint, (*see* Dkt. No. 2), and sought leave to proceed in forma pauperis, (*see* Dkt. No. 1), which was granted on July 15, 2015, (*see* Dkt. No. 4).  On November 24, 2015, Defendants sought permission to move to dismiss, (*see* Dkt. No. 19), and, on December 28, 2015, they filed their Motion and accompanying papers, (*see* Dkt. Nos. 22–27).  After several extensions, Plaintiff filed his Opposition on June 7, 2016, (*see* Dkt. No. 33), and, on June 29, 2016, Defendants submitted their Reply, (*see* Dkt. No. 37).  Plaintiff submitted a surreply on July 22, 2016.  (*See* Dkt. No. 41.)  Defendants filed their own surreply and accompanying papers on September 13, 2016.  (*See* Dkt. Nos. 48–50.)

---

[5] Plaintiff's memorandum in support of his reply is included in a single docket entry along with his "reply motion" and declaration in support of his reply.  (*See* Dkt. No. 33.)

## II.  Discussion

### A.  Standard of Review

In order to determine what standard applies to Defendants' Motion, the Court must first decide whether it will, consistent with Defendants' proposal, (*see generally* Mem. of Law in Supp. of Defs.' Mot. To Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem.") (Dkt. No. 23) (presenting Motion as one brought under Rule 12(b)(6) or Rule 56)), convert the Motion to one for summary judgment so that the Court can consider additional material beyond that presented in Plaintiff's submissions.  *Cf.* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  "Federal courts have complete discretion in determining whether to exclude material beyond the pleadings or to convert a motion to dismiss into a motion for summary judgment."  *Mason Tenders Dist. Council of Greater N.Y. v. W. Sur. Co.*, No. 15-CV-9600, 2016 WL 4098568, at *3 n.1 (S.D.N.Y. July 28, 2016) (internal quotation marks omitted).  Given that "notice is 'particularly important' for a pro se litigant, who must be 'unequivocal[ly]' informed 'of the meaning and consequences of conversion to summary judgment," *Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 68 (2d Cir. 2014) (quoting *Hernández v. Coffey*, 582 F.3d 303, 307–08 (2d Cir. 2009)), and given the factual disputes underlying the allegations in this case, the Court is not persuaded that conversion is appropriate here.

Turning to the standard under Federal Rule of Civil Procedure 12(b)(6), "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt

. . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015).  In deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his [or her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517

F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves

regarding procedural rules and to comply with them." (italics and internal quotation marks

omitted)).

    B.  Analysis

       1.  Sovereign Immunity

Plaintiff has brought claims against Defendants in both their individual and official

capacities.  (*See* Compl. 1.)  Defendants argue that "the Eleventh Amendment bars Plaintiff's

[claims against Defendants in their official capacities] and request for monetary damages."

(Defs.' Mem. 7.)  The Eleventh Amendment prohibits suits against a state or its agency in federal

court unless the state consents or there has been a valid abrogation of its sovereign immunity by

an act of Congress.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–01

(1984).  Section 1983 does not constitute such an abrogation.  *See Quern v. Jordan*, 440 U.S.

332, 343 (1979); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of

§ 1983 claims for damages against state, department, prison, and prison officials in their official

capacities on Eleventh Amendment grounds); *see also Moreau v. Peterson*, No. 14-CV-201,

2015 WL 4272024, at *5 (S.D.N.Y. July 13, 2015) ("[The] [d]efendants are employees of

DOCCS and, as such, officials of the State of New York.  [The] [p]laintiff's claims against [the]

[d]efendants in their official capacities are therefore considered to be claims against the State,

and are barred by the Eleventh Amendment."), *appeal filed*, No. 15-2534 (Aug. 11, 2015); *Leer

v. Fisher*, No. 13-CV-8529, 2015 WL 413253, at *6 (S.D.N.Y. Feb. 2, 2015) (dismissing § 1983

claims against prison officials in their official capacities); *Shannon v. Venettozzi*, No. 13-CV-

4530, 2015 WL 114179, at *3 (S.D.N.Y. Jan. 8, 2015) (dismissing claims against prison officials

in their official capacities), *appeal filed*, No. 15-2484 (Aug. 6, 2015).  Accordingly, all claims against Defendants in their official capacities are dismissed on the grounds of Eleventh Amendment sovereign immunity.

### 2.  Timeliness

Defendants also argue that Plaintiff's retaliation claims against Jackson and Ortiz and his due process claims against Jackson and Shibah are time-barred.  (*See* Defs.' Mem. 5–7.) Defendants are correct that, on the facts pleaded, Plaintiff's claims are untimely.  The claims are therefore dismissed, but without prejudice.

Although "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove," a statute of limitations defense may be "raise[d] . . . in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Zhongwei Zhou v. Wu*, No. 14-CV-1775, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015) (same); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." (alteration and internal quotation marks omitted)).

When a plaintiff brings an action under § 1983, "courts apply the statute of limitations for personal injury actions under state law."  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions.'" (alterations omitted) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989))).

The statute of limitations for personal injury actions in New York is three years.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *see also* N.Y. C.P.L.R. § 214(5).  "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Hogan*, 738 F.3d at 517 (citing, inter alia, *Pearl*, 296 F.3d at 79); *see also Staten v. Village of Monticello*, No. 14-CV-4766, 2015 WL 6473041, at *5 (S.D.N.Y. Oct. 26, 2015) (same). Federal law determines when a § 1983 cause of action accrues, and the Second Circuit has ruled that "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Pearl*, 296 F.3d at 80 (internal quotation marks omitted); *see also MacFarlane v. Ewald*, No. 10-CV-2877, 2016 WL 4076585, at *3 (E.D.N.Y. Aug. 1, 2016) (same); *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 539 (S.D.N.Y. 2014) (same).  Accrual does not wait "until the [plaintiff] has received judicial verification that the defendants' acts were wrongful."  *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994).  Nevertheless, "claims brought by an inmate under the Prison Litigation Reform Act . . . 42 U.S.C. § 1997e(a), are entitled to equitable tolling during the time period the inmate is exhausting his administrative remedies." *Gonzalez v. Hasty*, 651 F.3d 318, 319 (2d Cir. 2011).  However, such tolling is limited to the "time period in which the inmate is *actively exhausting* his administrative remedies."  *Id.* at 322 n.2 (emphasis in original).

### a.  Has the Statute of Limitations Lapsed?

In order to determine whether Plaintiff's claims are timely, it is, of course, incumbent upon the Court to determine when they accrued.  Here, as Defendants rightly note, (*see* Defs.' Mem. 5–7), Plaintiff alleges two types of claims, specifically (1) First Amendment retaliation and (2) procedural due process.

With respect to the former, the claim accrues once "all of the elements necessary to state the claim are present." *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015); *see also Albritton v. Morris*, No. 13-CV-3708, 2016 WL 1267799, at *10 (S.D.N.Y. Mar. 30, 2016) (same); *Turner v. Boyle*, 116 F. Supp. 3d 58, 83–84 (D. Conn. 2015) ("Under federal law, a claim for . . . First Amendment retaliation[] accrues at the time that the allegedly wrongful conduct took place.").

Plaintiff's retaliation claim against Jackson arose on September 18, 2011, when Jackson wrote the allegedly false misbehavior report, (*see* Compl. 9), and thus needed to be filed by September 18, 2014 in order to be timely. Plaintiff's retaliation claim against Ortiz arose on October 20, 2011, when Ortiz charged Plaintiff with marijuana use, (*see id.* at 10, 14), and thus needed to be filed by October 20, 2014 in order to be timely. Because Plaintiff did not file his Complaint until June 29, 2015, Plaintiff's retaliation claims are untimely, absent any applicable tolling doctrines.

With respect to the due process claims, determining the accrual date is a difficult enterprise. On the one hand, some cases posit that "if the length of a plaintiff's confinement is affected by the result of a disciplinary hearing, the plaintiff's cause of action does not accrue until the guilty determination is reversed." *Mohamed v. Powers*, No. 14-CV-1389, 2015 WL 8492472, at *3 (N.D.N.Y. Dec. 10, 2015) (internal quotation marks omitted); *see also McEachin v. Drefus*, No. 06-CV-1489, 2008 WL 686812, at *2 (N.D.N.Y. Mar. 10, 2008) (noting same (citing *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996))). The logic behind this line of analysis appears traceable to the Second Circuit's decision in *Black v. Coughlin*, which applied the so-called favorable termination rule from *Heck v. Humphry*, 512 U.S. 477 (1994) to conclude that a due process claim accrued upon the date of a state court reversal of disciplinary proceedings. *See* 76 F.3d 72, 75 (2d Cir. 1996). However, *Black* was decided two years before the Supreme

Court again weighed in on the question in *Edwards v. Balisok*, 520 U.S. 641 (1997), in which it applied the *Heck* rule in the context of a complaint where the inmate alleged procedural defects that "would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646.  However, the import of *Edwards* was arguably obscured by a concurrence that suggested that not all procedural due process violations in cases bearing upon an inmate's good-time credits would imply the invalidity of the deprivation, *see id.* at 649–50 (Ginsburg, J., concurring); *see also Bonty v. Stevenson*, No. 09-CV-3838, 2011 WL 2112432, at *1 (N.D. Cal. May 24, 2011) (distinguishing the plaintiff's case requesting "damages . . . based on the allegation that [the] [d]efendant denied him the opportunity to present witnesses at his disciplinary hearing," and noting that "[the] case [was] not like *Edwards,* in which the prisoner there alleged deceit and bias").  *But see Burnell v. Coughlin*, 975 F. Supp. 473, 478 (W.D.N.Y. 1997) (declining to conclude on the basis of the *Edwards* concurrence that "the . . . majority intended to limit its application only to those procedural errors which are so egregious as essentially to constitute 'reversible error' regardless of any other factors").

Added to this analysis, there is case law suggesting that the time a due process claim accrues depends on when the infirm proceedings actually deprived the plaintiff of liberty.  *Cf. Victory v. Pataki*, 814 F.3d 47, 63 n.14 (2d Cir. 2016) ("A claim for denial of procedural due process accrues once an inmate is deprived of his constitutional procedural rights and is deprived of liberty as a result.").  Other law posits that when an inmate claims to be aware of due process violations during a disciplinary proceeding and has challenged the suit in an Article 78 proceeding, his claim accrues no later than the date of the disciplinary proceeding's disposition. *See Baez v. Pinker*, No. 13-CV-9165, 2015 WL 3457277, at *4 (S.D.N.Y. June 1, 2015) (citing *Baez v. Bezio*, 908 N.Y.S.2d 608 (App. Div. 2010)), *appeal filed*, No. 15-1932 (June 16, 2015).

14

The complexity of the case law, perhaps, makes a compelling argument in favor of legal agnosticism. *Cf. Tafari v. Rock*, No. 11-CV-57, 2012 WL 1424725, at *2 (W.D.N.Y. Apr. 24, 2012) (noting that certain "[c]ourts . . . have generally set the accrual date for procedural Due Process claims related to disciplinary hearings either at the date of the disciplinary hearing or at the date the prisoner's final administrative appeal is decided" and collecting cases (internal quotation marks omitted)); *see also Williams v. Roberts*, No. 11-CV-29, 2011 WL 7468636, at *5 (N.D.N.Y. Dec. 15, 2011) ("In this case, [the] [p]laintiff's [h]earings were held on October 25 and November 14, 2007, and those are the relevant dates when [the] [p]laintiff was, or should have been, aware of any Due Process violations that ensued."), *adopted by* 2012 WL 760777 (N.D.N.Y. Mar. 7, 2012). But that, of course, is not an option.

Hard though this question may be, the Court concludes that the best answer for this case is that Plaintiff's claims accrued on the last day of the final disciplinary hearing, as that is when he "ha[d] reason to know of the injury which is the basis of his action," *Pearl*, 296 F.3d at 80, and because, at that point, the "inmate [was] deprived of his constitutional procedural rights and . . . deprived of liberty as a result," *Victory*, 814 F.3d at 63 n.14, in light of the fact that both proceedings resulted in "recommended loss of good time" and over a year in the SHU, (Compl. 11).[6] While *Heck* and *Edwards* certainly seem instructive for accrual purposes in this context, they have not, in the time since they were decided, established a bright-line approach to when due process claims accrue in prison as one might expect. *Cf. Burnell*, 975 F. Supp. at 478.

---

[6] "[I]nmates have a liberty interest in good time credit they have already earned." *Abed v. Armstrong*, 209 F.3d 63, 66–67 (2d Cir. 2000); *see also Hill v. Laird*, No. 06-CV-126, 2016 WL 3248332, at *10 (E.D.N.Y. June 13, 2016) (same); *Hidalgo v. Hopin*, No. 01-CV-57, 2009 WL 4803689, at *8 (W.D.N.Y. Dec. 9, 2009) (finding protected liberty interest implicated where the punishment was one year in SHU; one year loss of commissary, packages, and phone; and one year loss of good time, but later reduced to nine months).

Shorn of this reason to conclude that Plaintiff's hearing accrued upon reversal, the Court concludes that Plaintiff's due process claim accrued no later than March 7, 2012, and thus needed to be filed by March 7, 2015, absent any applicable tolling doctrines.[7]

### b.  Tolling for Exhaustion of Administrative Remedies

As noted, however, Plaintiff's claim will be tolled for the portion of time during which he was actively exhausting his administrative remedies.  With respect to the two retaliation claims, those claims were not tolled during the time Plaintiff was pursuing administrative remedies because the Complaint indicates only that Plaintiff's efforts to exhaust consisted of "filing an administrative appeal" from the underlying disciplinary proceedings, (Compl. 4), and such a course of conduct is an inappropriate means of exhaustion for Plaintiff's retaliation claims, *see, e.g.*, *Toliver v. Fischer*, No. 12-CV-77, 2016 WL 3351974, at *2 (N.D.N.Y. Mar. 22, 2016) (dismissing, inter alia, First Amendment retaliation claim for failure to exhaust, but not dismissing due process claims relating to disciplinary proceedings, because they must "be exhausted by administrative appeals of the sanctions imposed"), *adopted sub nom. Toliver v. Stefinik*, 2016 WL 3349316 (N.D.N.Y. June 15, 2016); *Bennett v. Fischer*, No. 09-CV-1236, 2010 WL 5525368, at *6 (N.D.N.Y. Aug. 17, 2010) ("To the extent [the] plaintiff contends that he exhausted his administrative remedies with respect to his First and Eighth Amendment claims by pursuing his disciplinary appeal, the argument is unavailing."), *adopted by* 2011 WL 13826 (N.D.N.Y. Jan. 4, 2011); *cf. also Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004) (discussing the plaintiff's failure to "exhaust available administrative remedies before filing suit," where the plaintiff believed that he had to pursue his retaliation grievance through disciplinary appeals),

---

[7] In their brief, Defendants reach the same conclusions about the accrual date for the First Amendment retaliation, but they conclude that the due process claims accrued on March 7, 2012 for the first incident and October 20, 2011 for the second.  (*See* Defs.' Mem. 5–6.)

*abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016).[8]  However, the filing of an administrative appeal from his disciplinary proceedings would likely toll the statute of limitations with respect to Plaintiff's due process claims because such an appeals process is the proper mode of exhaustion.  *See Henson v. Gagnon*, No. 13-CV-590, 2015 WL 9809874, at *9 (N.D.N.Y. Dec. 10, 2015) ("[W]here an inmate's federal claims arise directly out of a disciplinary or administrative segregation hearing, (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." (ellipses and internal quotation marks omitted)), *adopted by* 2016 WL 204494 (N.D.N.Y. Jan. 15, 2016); *see also Khalild v. Reda*, No. 00-CV-7691, 2003 WL 42145, at *4 (S.D.N.Y. Jan. 23, 2003) ("When an inmate challenges the procedure at a disciplinary hearing that resulted in punishment, he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." (internal quotation marks omitted)); *Samuels v. Selsky*, No. 01-CV-8235, 2002 WL 31040370, at *8 (S.D.N.Y. Sept. 12, 2002) ("Disputes stemming from a disciplinary hearing are properly appealed directly and not through the Inmate Grievance Program.").

Nevertheless, with respect to Plaintiff's due process challenge relating to the October 20, 2011 incident, even if it accrued after the punishment was modified on appeal, more than three years elapsed between that date (February 3, 2012) and the filing of the Complaint (June 29, 2015).  Likewise, Plaintiff's due process complaint stemming from the September 18, 2011 incident would also be untimely because Plaintiff does not indicate when his appeal ended, and,

---

[8] Because Defendants have not briefed or otherwise argued the issue, the Court expresses no opinion on whether Plaintiff has exhausted his administrative remedies with respect to the retaliation claims.

hence, when the tolling ended.  This matters because the burden to establish entitlement to

equitable tolling falls on the plaintiff, *see, e.g.*, *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)

("The plaintiff bears the burden of showing that the action was brought within a reasonable

period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have

ceased to be operational." (internal quotation marks omitted)), and, without an indication that the

plaintiff was actively exhausting during that time, *see Gonzalez*, 651 F.3d at 322 n.2, his burden

will go unmet.[9]  Therefore, the Court concludes that tolling during the period of time when

Plaintiff was exhausting his administrative remedies cannot make his claim timely.

---

[9] It bears noting that, here, Defendants have submitted an affidavit to show when the appeals decision was handed down.  (*See* Decl. of Donald Venettozzi Ex. D (Dkt. No. 24).) Because, however, as noted, "a district court [adjudicating a Rule 12(b)(6) motion] must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken," *Leonard F.*, 199 F.3d at 107 (internal quotation marks omitted), and the Court has already declined to convert the motion to one for summary judgment, the Court will not consider this evidence.  Here, one wrinkle exists because Defendants also incorporated this fact into a Local Rule 56.1 Statement in the event that the Court converted the Motion into one for summary judgment, (*see* Local 56.1 Statement ¶ 8), and Plaintiff "admitt[ed]" to it in his opposition, (*see* Pl.'s Pro Se Reply Mot. ¶ 2 (Dkt. No. 33)).  Although "the mandate to liberally construe pro se pleadings makes it appropriate to consider the facts set forth in [a] plaintiff's opposition papers," *Falso v. Gates Chili Cent. Sch. Dist.*, 680 F. Supp. 2d 465, 466 (W.D.N.Y. 2010) (italics omitted), *aff'd*, 408 F. App'x 494 (2d Cir. 2011), that is not to be done without an eye on the policy underlying that proposition, *see McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *3 n.5 (S.D.N.Y. Mar. 31, 2016) ("[T]he policy reasons favoring liberal construction of pro se complaints permit a court to consider allegations of a pro se plaintiff in opposition papers on a motion where consistent with the complaint." (alterations and internal quotation marks omitted)).  Here, the Court does not think that the policy favoring liberal construction of pro se submissions requires the Court to surmise a new fact from Plaintiff's decision to admit to a fact contained in a document that he did not realize was procedurally premature.

### c.  Article 78 Proceedings

As noted, Plaintiff also contends that the statute of limitations for his claims was tolled pending the resolution of his Article 78 proceedings.  (*See* Pl.'s Opp'n 1–2.)  But "a plaintiff's pursuit of a state remedy, such as an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to [§] 1983."  *Abbas*, 480 F.3d at 641; *see also Brant v. City of Syracuse*, No. 15-CV-1382, 2015 WL 9598888, at *3 n.1 (N.D.N.Y. Dec. 7, 2015) (same), *adopted by* 2016 WL 67718 (N.D.N.Y. Jan. 5, 2016); *Williams v. Roberts*, No. 11-CV-29, 2011 WL 7468636, at *5 n.12 (N.D.N.Y. Dec. 15, 2011), *adopted by* 2012 WL 760777 (N.D.N.Y. Mar. 7, 2012) ("[T]he filing of an Article 78 petition does not toll the limitations period."). Thus, the statute of limitations in connection with Plaintiff's claims were unaffected by his Article 78 proceedings.

### d.  Equitable Tolling

Finally, Plaintiff contends that he was in "fear of retaliation by . . . [D]efendants [which] prevented him from filing his [claims] in a timely fashion," which he argues "is an extraordinary circumstance which warrants equitable tolling."  (Pl.'s Opp'n 2.)[10]

Under federal law, equitable tolling of the statute of limitations is applied "only in 'rare and exceptional circumstances,' where . . . 'extraordinary circumstances' prevented a party from timely performing a required act."  *Deraffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at *11 (S.D.N.Y. Mar. 30, 2016) (alteration in original) (quoting *Walker v. Jastremski*,

---

[10] To be sure, the tolling provision discussed in connection with Plaintiff's pursuit of administrative remedies is a form of equitable tolling.  *See Gonzalez*, 651 F.3d at 319 ("[C]laims brought by an inmate under the Prison Litigation Reform Act . . . are entitled to equitable tolling during the time period the inmate is exhausting his administrative remedies . . . .").  However, because the analysis, as a practical matter, unfolds differently in that specialized context than with Plaintiff's other equitable tolling arguments, the Court breaks them out separately.

430 F.3d 560, 564 (2d Cir. 2005)), *appeal filed*, No. 16-2369 (July 7, 2016); *see also Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448, 454 ("[C]ourts in th[e] [Second] Circuit deciding [§] 1983 claims have applied the federal equitable tolling standard, which allows tolling where extraordinary circumstances prevented a party from timely performing a required act." (internal quotation marks omitted)).  "Equitable tolling is generally not available where the circumstances that a plaintiff claims prevented him from timely filing were within the plaintiff's control." *Myers v. New York*, No. 14-CV-1492, 2016 WL 2636295, at *5 (N.D.N.Y. May 9, 2016) (citing *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001)); *see also Walker*, 430 F.3d at 564 (finding that equitable tolling was not available where pro se litigant's delay in filing his § 1983 action appeared to be entirely within his control).  Furthermore, "[t]he party asserting that equitable tolling applies must have 'acted with reasonable diligence throughout the period he [sought] to toll.'" *Myers*, 2016 WL 2636295, at *5 (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)).  "[A] plaintiff bears the burden of establishing that equitable tolling of [his] claims is appropriate." *Id.*  However, "[t]o secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *see also Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. Mar. 26, 2015) ("[T]o benefit from equitable tolling, a litigant must allege that extraordinary circumstances prevented him from acting in a timely manner." (internal quotation marks omitted)).

Plaintiff alleges that his "'fear of retaliation' is an extraordinary circumstance which warrants equitable tolling . . . [which] prevented him from filing his 1983 in a timely fashion." (Pl's Opp'n 2.)  As a preliminary matter, although the Second Circuit has not weighed in on the

issue, the balance of the case law suggests that fear of retaliation is not a valid ground for equitable tolling.  *See Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 136 n.14 (E.D.N.Y. 2013) (concluding, in a Title VII employment case, that "[f]ear of retaliation is not a basis for equitable tolling" and collecting cases); *see also Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 624 (7th Cir. 2002) ("Even if there were admissible evidence that [the defendant] had threatened the plaintiff with firing her if she sued, this would not make out a defense of equitable estoppel [to the defendant's statute of limitations argument]."); *Carter v. W. Publ'g Co.*, 225 F.3d 1258, 1266 (11th Cir. 2000) ("[The] [p]laintiffs' purported fear of retaliation, however, is not a ground for equitable tolling [in an employment discrimination case].  Otherwise, the doctrine . . . would effectively vitiate the statutory time requirement because an employee could defer filing indefinitely so long as she had an apprehension about possible retaliation." (citation omitted)); *Krooks v. Haverford Coll.*, No. 14-CV-4205, 2015 WL 221082, at *5 (E.D. Pa. Jan. 14, 2015) (noting that "[i]n the employment context, 'purported fear of employer retaliation is not a ground for equitable tolling'"); *Pratt v. Stop & Shop Supermarket Co., LLC*, No. 09-CV-5417, 2011 WL 579152, at *4 (E.D.N.Y. Feb. 9, 2011) (concluding, in a Title VII employment case, that "fear of retaliation is not grounds for equitable tolling").  These cases, however, all involve equitable tolling in the Title VII employment or the ADA context.  *See Beckel*, 301 F.3d 621 (Title VII); *Carter*, 225 F.3d 1258 (Title VII); *Krooks*, 2015 WL 221082 (ADA); *Pietri*, 936 F. Supp. 2d 120 (Title VII); *Pratt*, 2011 WL 579152 (Title VII).  And in analyzing the viability of a threat of retaliation excuse, these courts noted the unique statutory structure of Title VII. *See, e.g.*, *Beckel*, 301 F.3d at 624 (reasoning that a threat of retaliation "would be a form of anticipatory retaliation, actionable as retaliation under Title VII," and concluding that "[r]ather than deterring a reasonable person from suing, it would increase her incentive to sue by giving

her a second claim, in this case a claim for retaliation on top of her original claim of sexual

harassment"); *Carter*, 225 F.3d at 1266 ("Title VII specifically protects employees against

retaliation for filing a discrimination complaint."); *see also Krooks*, 2015 WL 221082, at \*5

("The various courts held that it would defeat the purpose of Congress's intent to add a statute of

limitation if a [p]laintiff could defer filing so long as he feared retaliation, particularly where

Congress had already instituted the failsafe mechanism of a retaliation cause of action.").  By

contrast, there is no First Amendment cause of action for anticipatory retaliation, *see Espinal v.*

*Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (noting that one element of a First Amendment

retaliation claim is that "the defendant took adverse action against the plaintiff"); *cf.* James E.

Robertson, *"One of the Dirty Secrets of American Corrections": Retaliation, Surplus Power,*

*and Whistleblowing Inmates*, 42 U. Mich. J.L. Reform 611, 614 (2009) ("[W]hen inmates abstain

from filing grievances for fear of retaliation, they cannot bring the underlying complaint to

federal court . . . ."), and Plaintiff's claim for past retaliation is one of the very claims that is

under scrutiny for timeliness.  The case law thus does not answer whether fear of retaliation is a

valid basis for invoking equitable tolling in the context of an inmate's § 1983 suit.

     Additionally, in the prison context, it is already settled that fear of retaliation can excuse

an inmate's failure to exhaust administrative remedies.  *See Ross*, 136 S. Ct. at 1860 (holding

that administrative exhaustion is not required "when prison administrators thwart inmates from

taking advantage of a grievance process through machination, misrepresentation, or

intimidation"); *see also Williams v. Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (same).  But

this exception is not derived from principles of equitable tolling; it is instead based on the Prison

Litigation Reform Act, 42 U.S.C. § 1997 et seq., which requires only exhaustion of "such

administrative remedies as are available," *id.* § 1997e(a); *see also Ross*, 136 S. Ct. at 1856–57.

Because the Prison Litigation Reform Act does not control the question of whether threat of retaliation is a valid ground for equitable tolling, the case law discussing the exhaustion of administrative remedies is of little help.

Instead, the Court turns to the underlying principles of equitable tolling and the realities that inmates like Plaintiff face in seeking to assert their rights.  The chief impediment for invoking equitable tolling in this situation is that extraordinary circumstances will exist only where "the 'exceptional circumstances' giving rise to equitable tolling [were] 'beyond [the] control' of the party who seeks to benefit from it."  *Walker*, 430 F.3d at 564 (first alteration in original) (quoting *Smaldone*, 273 F.3d at 138).  The failure to file a timely complaint out of fear of retaliation is, at least as a theoretical matter, an impediment that is within a plaintiff's control. It makes some sense, then, in the employment context, to exclude fear of retaliation as a basis for equitable tolling.

But plaintiffs arguing for equitable tolling in the employment context are situated much differently from plaintiffs filing lawsuits from prison.  "Nowhere in our society is more forceful and sustained control over persons exercised than in its prisons . . . ."  Craig Haney, *Psychology and the Limits to Prison Pain Confronting the Coming Crisis in Eighth Amendment Law*, 3 Psychol. Pub. Pol'y & L. 499, 499 (1997).  Such sustained control tends to result in "adverse psychological effects" that invariably have "behavioral consequences."  Jason J. Ben, *America's Need to Explore Alternatives to Incarceration: Can America Purport to Be the "Land of the Free" When It Currently Is the World's Leading Incarcerator?*, 30 S.U. L. Rev. 349, 356 (2003). When these "negative psychological effects of imprisonment" become "chronic and deeply internalized," inmates experience:

> dependence on the external constraints of institutional structure and contingencies; hypervigilance, interpersonal distrust and suspicion of threat or personal risk;

> emotional over-control, alienation and psychological distancing as a defense against exploitation and awareness of the riskiness and unpredictability of emotional investments in relationships; social withdrawal and isolation; incorporation of exploitative informal rules and norms of prison culture; diminished sense of self-worth and personal value; and posttraumatic stress reactions to the pains of imprisonment.

Zieva Dauber Konvisser, *Psychological Consequences of Wrongful Conviction in Women and the Possibility of Positive Change*, 5 DePaul J. for Soc. Just. 221, 241 (2012) (internal quotation marks omitted).

Retaliation and fear of retaliation are natural consequences of this unique psychological environment. And that fear of retaliation is not merely speculative or conjectural, as "it is clear that the level of actual retaliation, as well as the perception of likely retaliation among . . . inmates . . . constitutes the single most important and difficult obstacle to inmates' use of the [grievance] system." Vincent M. Nathan, *Evaluation of the Inmate Grievance System Ohio*, Ohio Dep't of Rehab. & Corr. 28 (Feb. 13, 2001), https://www.law.umich.edu/facultyhome/margoschlanger/Documents/Resources/Prison_and_Jail _Grievance_Policies/Ohio_Nathan_Evaluation_Grievance_System.pdf. Unlike employees in the Title VII or ADA context, who have meaningful access to remedies for retaliation and anticipated retaliation, "[p]risons invest in correctional officers rule enforcement powers that readily mask retaliatory intent," Robertson, *supra*, at 615–16 (noting that "the frequent vagueness of disciplinary rules provides correctional officers ample leeway in deciding when and where to enforce these rules" (footnote omitted)), thereby subverting the mechanisms designed to protect plaintiffs from retaliatory conduct.

Given this unique context and the substantial control that correction officers exert over inmates, *see* M. Jackson Jones, *Power, Control, Cigarettes, and Gum: Whether an Inmate's Consent to Engage in a Relationship with a Correctional Officer Can Be a Defense to the*

*Inmate's Allegation of a Civil Rights Violation Under the Eighth Amendment*, 19 Suffolk J. Trial & App. Advoc. 275, 306 (2014) ("Basically, a correctional officer controls an inmate's life inside of prison."), the specter of retaliation, a real and ever-present force in an inmate's life, can reasonably be said to be outside of an inmate-plaintiff's control.  Thus, the Court concludes that in the prison context, reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling, particularly if the person threatening retaliation is a defendant or another official who could be or was influenced by a defendant.

But that is not to say that every inmate is entitled to equitable tolling merely because he resides in an environment that intrinsically works to his disadvantage.  After all, "most inmates perceive that they will expose themselves to retaliation if they use the grievance system," Nathan, *supra*, at 25, but certainly not all inmates are entitled to equitable tolling.  Generalized allegations of fear of retaliation, therefore, are not sufficient to establish "extraordinary circumstances" warranting application of equitable tolling.  *See Nicoloudakis v. Bocchini*, No. 13-CV-2009, 2016 WL 3617959, at *3 (D.N.J. July 1, 2016) ("Generalized fear of reprisal is not enough to warrant equitable tolling . . . ."), *appeal filed*, No. 16-3372 (Aug. 15, 2016); *Rosenblum v. Yates*, No. 09-CV-3302, 2011 WL 590750, at *3 (E.D. Cal. Feb. 10, 2011) (finding that the plaintiff's "generalized allegation . . . [of] fear of retaliation" was "insufficient to meet his high burden").  Here, however, Plaintiff has not offered merely generalized assertions of fear of retaliation.  Rather, Plaintiff has alleged specific facts that gave rise to his fear upon his return to Sing Sing from Southport, including: (1) that one Defendant told Plaintiff not to "get comfortable" upon his return to Sing Sing; (2) that a false misbehavior report was filed against Plaintiff (and subsequently dismissed) upon his return to Sing Sing; (3) that one correction officer frisked Plaintiff and told him, "I hope your [sic] not gonna write me up for this because I

know about you"; and (4) that following a search of Plaintiff's cell, another correction officer told Plaintiff not to "be writing a bunch of shit up around here," and told Plaintiff that "you know weapons can be found in your cell." (Pl.'s Decl. in Supp. of Pl.'s Reply 1–2 (Dkt. No. 33).) And Plaintiff explains that the reason he ultimately felt safe in filing the Complaint was that the superintendent of the facility and the captain of security assured him he would not be retaliated against. (*See id.* at 2–3.)

Accordingly, because the Court concludes that inmates may show extraordinary circumstances for purposes of equitable tolling where they allege specific facts showing that a reasonable fear of retaliation prevented them from filing a timely complaint, and because Plaintiff has alleged such facts, the Court is satisfied that Plaintiff has met the first prong of the equitable tolling inquiry.

Less clear, however, is whether Plaintiff has alleged facts showing that he exercised reasonable diligence during the time he felt threatened by officers at Sing Sing. Plaintiff does not explain, for example, when he contacted the superintendent seeking protection from retaliation. (*See id.*) The timing of that request is relevant because the Court would be hard pressed to conclude that Plaintiff exercised reasonable diligence in pursuing his rights if, for the entire time Plaintiff alleges he faced a threat of retaliation, he did nothing to seek protection from that threat of retaliation. And, assuming Plaintiff promptly sought the support of the superintendent, the Court needs to know when that support was given so that the Court can determine when the tolling of Plaintiff's claims started and stopped. The timing is especially sensitive here, as Plaintiff's claims, if untimely, are untimely by less than a year. (*See* Defs.' Mem. 5–7.) There are, accordingly, insufficient facts for the Court to conclude that Plaintiff

acted with reasonable diligence during the time he was facing a threat of retaliation.  At this juncture, the Court cannot say that equitable tolling is warranted in Plaintiff's case.

However, given Plaintiff's pro se status and the Court's obligation to liberally construe pro se pleadings, the Court is hesitant to dismiss Plaintiff's claims at this point without providing Plaintiff an opportunity to amend his complaint at least once.  *See Owens v. N.Y.C. Dep't of Sanitation*, No. 11-CV-8297, 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) (noting that, in general, "a court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice" (internal quotation marks omitted)); *Horace v. Gibbs*, No. 14-CV-655S, 2015 WL 1033089, at *2 (W.D.N.Y. Mar. 9, 2015) ("Generally, the Court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." (italics and internal quotation marks omitted) (quoting *Abbas*, 480 F.3d at 639); *Ogunbayo v. Montego Med. Consulting*, Nos. 11-CV-4047, 12-CV-428, 2012 WL 6625921, at *7 (E.D.N.Y. Dec. 19, 2012) (adopting magistrate judge's recommendation that the "[p]laintiff, proceeding pro se, should be afforded an opportunity to amend the [dismissed] [c]omplaint").  Therefore, Plaintiff is granted leave to amend his Complaint in order to allege sufficient facts to show that he pursued his claims with reasonable diligence during the time he faced the threat of retaliation.  Specifically, Plaintiff must allege what steps he took to secure the superintendent's assurance that he would not be retaliated against, when he took those steps, when the superintendent offered his support, and any other facts showing that Plaintiff exercised reasonable diligence in pursuing his claims.  Plaintiff must also amend his Complaint to include the allegations of retaliation raised in his motion papers—the facts supporting Plaintiff's assertion that correction officers threatened to retaliate against him if he filed his lawsuit must be

27

included in the amended complaint. Plaintiff must file his amended complaint within 30 days of the date of this Opinion.

### III. Conclusion

Plaintiff is granted leave to file an amended complaint within 30 days of the date of this Opinion. The Clerk of Court is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 22.)

SO ORDERED.

Dated:    September 30, 2016
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE