UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TIQUAN DAVIS,

                Plaintiff,

     v.

CORRECTION OFFICER T. GRANT and SGT.
TODD PAROLINE,

                Defendants.

No. 15-CV-5359 (KMK)

OPINION & ORDER

---

Appearances:

Tiquan Davis
Ossining, NY
*Pro Se Plaintiff*

Yan Fu, Esq.
New York State Attorney General
New York, NY
*Counsel for Defendants*

       Tiquan Davis ("Plaintiff"), proceeding pro se, brings this Action against Correction

Officer T. Grant ("Grant") and Sergeant Todd Paroline ("Paroline") (collectively, "Defendants"),

employees of the New York State Department of Correction and Community Supervision

("DOCCS"), pursuant to 42 U.S.C. § 1983, alleging retaliation arising out of allegedly false

misbehavior reports filed by Defendants. (*See* Second Am. Compl. ("SAC") (Dkt. No. 88).)[1]

---

[1] Plaintiff's retaliation claims against Defendants Grant and Paroline are the only
remaining claims in this case. The Court dismissed all other Defendants and claims in a
September 30, 2016 Opinion and Order, (*see* Opinion & Order (Sept. 30, 2016) ("Sept. 30, 2016
Opinion") (Dkt. No. 52)), and a January 8, 2018 Opinion and Order (*see* Opinion & Order (Jan.
8, 2018) ("Jan. 8, 2018 Opinion") (Dkt. No. 86).)

Before the Court is Defendants' Motion for Summary Judgment. (*See* Not. of Mot. (Dkt. No. 94).) For the reasons explained herein, Defendants' Motion for Summary Judgment is granted.

## I. Background

### A. Factual Background

The Court has described the allegations and procedural history of this case in two prior published Opinions. *See Davis v. Jackson*, No. 15-CV-5359, 2016 WL 5720811 (S.D.N.Y. Sept. 30, 2016); *Davis v. Jackson*, No. 15-CV-5359, 2018 WL 358089 (S.D.N.Y. Jan. 8, 2018). The Court therefore assumes familiarity with the dispute and will provide factual and procedural background only as relevant to the instant Motion.

The following facts are taken from Defendants' statements pursuant to Local Civil Rule 56.1, (Defs.' Local Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 95)), and Plaintiff's "Reply to Summary Judgment" and "Declaration in Support of Reply," both filed in the same document, (Pl.'s Reply in Opp'n to Mot. for Summ. J. ("Pl.'s Reply") (Dkt. No. 101); Decl. of Tiquan Davis ("Pl.'s Decl.") (Dkt. No. 101)), and the admissible evidence submitted by the Parties.[2]

---

[2] Plaintiff submitted a Declaration in which he stated that he made his Declaration "pursuant to 28 U.S.C. § 1746." (Pl.'s Decl. 1.) The Court notes that Plaintiff's Declaration is nearly identical to a supplement to the SAC Plaintiff filed on April 10, 2018. (*See* Letter from Tiquan Davis to Court ("SAC Supp.") (Dkt. No. 93).) That Supplement, like the Declaration, fails to include the "under penalty of perjury" language. The Second Circuit has held that the absence of the "under penalty of perjury" language constitutes a substantial departure from § 1746. *See In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (holding that failure to include the phrase "under penalty of perjury" in a declaration constituted a substantial departure from § 1746 such that the district court did not err in invalidating a declaration that lacked such language); *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65–66 (2d Cir. 1999) (reversing summary judgment granted to plaintiff where district court excluded defendant's unsworn letter that "substantially" complied with the requirements of § 1746, because it included the language "[u]nder penalty of perjury, I make the statements contained herein," and was signed and dated, even though it did not include language that the contents of the letter were "true and correct"); *Stair v. Calhoun*, No. 12-CV-6121, 2015 WL 1966345, at *1 (E.D.N.Y. May 1, 2015) (finding that pro se plaintiff's unsworn declaration that did not include the language "true under penalty of perjury" did not meet the requirements of

The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (internal quotation marks omitted).[3] The facts as described below are in dispute only to the extent indicated.

_____

§ 1746 because "[i]nclusion of the language 'under penalty of perjury' is an integral requirement of the statute" (citations, quotation marks, and alterations omitted)); *Ed-George v. Burns*, 09-CV-0869, 2009 WL 2957796, at *2 (N.D.N.Y. 2009) (finding that although § 1746 "requires only that a declaration [] 'substantially' conform with its requirements, the words "under penalty of perjury" are "expressly required" because without them "it is far from clear to the court that [the] [p]laintiff fully appreciates the consequences, or is impressed with the solemnity of his declaration" (citations, quotation marks, and alterations omitted)).

Plaintiff's Declaration does not include the language "under penalty of perjury" nor does it state that the contents are "true and correct." It therefore lacks precisely the "integral requirement of the statute" that is meant to impress upon every declarant "the specific punishment to which he or she is subjected for certifying to false statements." *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d at 488. The Court could therefore decide this Motion without considering Plaintiff's Declaration. However, because Plaintiff fails to raise a triable issue of fact even if his Declaration is considered, the Court will consider Plaintiff's Declaration, especially in light of the "special solicitude" afforded to pro se litigants. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).

[3] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same). "A pro se litigant is not excused from this rule," *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted). Here, Defendants filed and served their 56.1 Statement, (Defs.' 56.1), in addition to a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (Dkt. No. 99). Despite this notice, Plaintiff failed to submit a response to Defendant's 56.1 Statement of Facts. Accordingly, the Court may conclude that the facts in Defendant's 56.1 Statement are uncontested and admissible. *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when

At all times relevant to the claims in the SAC, Plaintiff was incarcerated at Sing Sing Correctional Facility ("Sing Sing"). (Defs.' 56.1 ¶ 1.) DOCCS has an inmate grievance procedure. (*Id.* ¶ 3.) An Inmate Grievance Program ("IGP") procedure exists at Sing Sing. (*Id.* ¶ 4.)

In his SAC, Plaintiff alleges that: (1) at some time in March 2014, Grant issued a false misbehavior report against him in retaliation for an incident involving Plaintiff and Correction Officer Angela Jackson;[4] (2) on October 31, 2015, Grant issued a misbehavior report against Plaintiff in retaliation for filing a lawsuit against Jackson; (3) on August 4, 2015, Paroline confiscated Plaintiff's belt buckle, falsely told Office of Mental Health ("OMH") officials that Plaintiff was suicidal, and wrote a false misbehavior report; and (4) on August 8, 2015, Paroline wrote Plaintiff another misbehavior report after Plaintiff was found not guilty of the charges in the August 4, 2015 misbehavior report. (*Id.* ¶ 2; *see generally* SAC.)

---

confronted with motions for summary judgment," *Graham*, 848 F.2d at 344, the Court will "in its discretion opt to conduct an assiduous review of the record," when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted); *see also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-3872, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and quotation marks omitted)). The Court also will consider Plaintiffs' opposition papers.

[4] Defendant Jackson was dismissed from this Action with prejudice by the Jan. 8, 2018 Opinion.

4

Plaintiff filed a grievance on August 13, 2015, which was assigned grievance number 55380-15 (the "55380-15 Grievance"). (Defs.' 56.1 ¶ 5.) In the grievance, Plaintiff claimed, among other things, that on August 4, 2015, Paroline confiscated his belt buckle, falsely told OMH officials that Plaintiff was suicidal, and wrote a false misbehavior report. (*Id*. ¶ 6.) Because Plaintiff alleged harassment by DOCCS staff, his grievance was forwarded to the Sing Sing Superintendent pursuant to 7 NYCRR § 701.8. (*Id*. ¶ 7.) Following an investigation, Plaintiff's grievance was denied on September 3, 2015. (*Id*. ¶ 8.) Sing Sing has no record of any appeal by Plaintiff of the denial of the 55380-15 Grievance to the DOCCS Central Office Review Committee ("CORC"). (*Id*. ¶ 9.)

With respect to the August 4, 2015, Paroline grievance report, Plaintiff claims that after he received his "response from the superintendent," which the Court takes to mean the September 3, 2015 denial of the grievance, Plaintiff "wrote [his] appeal out for CORC . . . and was personally able to hand [his] appeal to the grievance sgt who told [him] that they would make sure [his] appeal got filed." (Pl.'s Decl. ¶ 4.) Plaintiff claims he has still not heard from CORC regarding his appeal. (*Id*.)

With respect to the October 31, 2015, incident involving Grant, Plaintiff states in his Declaration that on October 31, 2015, he wrote a harassment and retaliation grievance and gave this grievance to the B-block IGRC representative to file. (*Id*. ¶ 2.) After three weeks Plaintiff claims he asked the same representative whether he had filed his grievance because he had not heard anything. (*Id*.) The representative told him he had filed the grievance and that he would check on the status with the IGP supervisor. A week later the representative told Plaintiff that the IGP had told him they would get back to him but never did. (*Id*.) The representative suggested to Plaintiff that he appeal it to the CORC "because the grievance was a 'code 49' and

would be sent straight to the superintendent." (*Id.*)  Plaintiff alleges he then drafted his appeal "that night," included a copy of his original grievance dated October 31, 2015, and gave it to the representative the next morning.  Plaintiff claims he has still not heard anything regarding this grievance.  (*Id.*)

Plaintiff filed eight other grievances while at Sing Sing between 2014 and 2017, including complaints that (1) the "staff failed to follow instructions," (2) he "wants cooling system in the hallways," (3) he "claims dental is not providing him treatment," (4) he "wants decision of tier 2," (5) involve "in-cell movie and DVD issue," (6) he "wants to know why he was not allowed to run for ILC," (7) involve "staff interference with AVP," and (8) he "wants to be placed in the program."  (Decl. of Quandera Quick ("Quick Decl.") ¶¶ 6–7, Ex. A (Plaintiff's Sing Sing Grievance Record) (Dkt. No. 96).)  Besides the 55380-15 Grievance, none of the grievances filed by Plaintiff between 2014 and 2017 involved an allegedly false misbehavior report or harassment by staff.  (Quick Decl. ¶ 12.)  Since Plaintiff has been incarcerated under his current Department Identification Number (#95-A-0305), he has appealed 39 grievances to CORC.  (Decl. of Rachael Seguin ("Seguin Decl.") ¶ 6, Ex. A, at 3 (Plaintiff's CORC Grievance Record) (Dkt. No. 97).)[5]  According to CORC records, Plaintiff did not appeal any grievances to CORC between 2012 and 2016.  (Seguin Decl. ¶ 8; Plaintiff's CORC Grievance Record at 3.) Plaintiff appealed one grievance in 2016 and it involved television programming.  (Plaintiff's CORC Grievance Record at 3.)

In his Declaration, Plaintiff claims that he made copies of his grievances but cannot find them.  (Pl.'s Decl. ¶ 6.)  He states that he knows he followed the "steps of the PLRA [Prison

_____

[5] For non-paginated exhibits, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

Litigation Reform Act of 1995] to the best of [his] abilities," because he used to be a grievance representative himself and was "fully aware that in order to exhaust [his] claims [he] had to follow thr[ough] all the way to the CORC." (*Id.*) Plaintiff further states that in doing so he had to "rely on the IGRC to carry out their functions which they clearly did not do." (*Id.*)[6]

B. Procedural History

On July 7, 2015, Plaintiff filed his Complaint, (*see* Compl. (Dkt. No. 2)), and sought leave to proceed in forma pauperis, (*see* Dkt. No. 1), which was granted on July 15, 2015, (*see* Dkt. No. 4). On December 28, 2015, Defendants filed their Motion to Dismiss and accompanying papers. (*See* Dkt. Nos. 22–27.) After several extensions, Plaintiff filed his Opposition on June 7, 2016, (*see* Dkt. No. 33), and, on June 29, 2016, Defendants submitted their Reply, (*see* Dkt. No. 37). Plaintiff submitted a surreply on July 22, 2016, (*see* Dkt. No. 41),

---

[6] In his Declaration, Plaintiff also makes several general statements about Sing Sing's grievance-filing process. "Between 2014 until the present there have been numerous complaints made by the ILC to the administration about the IGRC's failure to hold timely hearing, lose and not file appeals, especially those made against corrections staff. These complaints caused the director of CORC to physically come to [Sing Sing] to investigate." (Pl.'s Decl. ¶ 5.) However, "where a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)). Plaintiff does not point to any admissible evidence documenting any complaints that other inmates allegedly made about the grievance-filing process, nor does he explain the basis of his personal knowledge of the CORC director's alleged visit to Sing Sing. Plaintiff does not explain how he knows or what he knows about these alleged complaints made by the ILC. Defendants, on the other hand, have submitted evidence to show that an IGP exists at Sing Sing, (Defs.' 56.1 ¶ 4), and that Plaintiff had successfully used the IGP, given that he filed eight other grievances while at Sing Sing between 2014 and 2017, (*id.* ¶ 10), and appealed 39 grievances to CORC, (*id.* ¶ 13). Thus, although the Court considers portions of Plaintiff's Declaration that are based on personal knowledge and set out facts that would be admissible as evidence, *DiStiso*, 691 F.3d at 230, the Court will not consider these statements by Plaintiff about the general flaws in Sing Sing's grievance process and the issues other inmates allegedly had with filing grievances, of which Plaintiff has no personal knowledge. *See Baity*, 51 F. Supp. 3d at 419–20 (disregarding plaintiff's affidavit that "contain[ed] a surfeit of improper averments, including statements not based on [the] [p]laintiff's personal knowledge and conclusory statements that are nothing more than speculation").

and Defendants filed their own surreply and accompanying papers on September 13, 2016, (*see* Dkt. Nos. 48–50).

On September 30, 2016, the Court issued an Opinion and Order dismissing, without prejudice, Plaintiff's official capacity claims and finding that Plaintiff's due process and retaliation claims were time-barred absent application of an applicable tolling doctrine. (*See generally* Opinion & Order (Sept. 30, 2016) ("Sept. 30, 2016 Opinion") (Dkt. No. 52).) The Opinion allowed Plaintiff time to file an Amended Complaint. (*Id*. at 28.)

On December 1, 2016, Plaintiff filed an Amended Complaint. (*See* Am. Compl. (Dkt. No. 65).) On June 20, 2017, Defendants filed their motion to dismiss the Amended Complaint and accompanying papers, (*see* Dkt. Nos. 77–80). On August 14, 2017, Plaintiff filed his Opposition papers. (*See* Dkt. Nos. 83–84.) Defendants filed a letter brief in Reply in lieu of a formal Memorandum of Law. (*See* Letter from Yan Fu, Esq., to Court (Aug. 29, 2017) (Dkt. No. 85).)

On January 8, 2018, the Court issued an Opinion and Order granting in part and dismissing in part Defendants' Motion to Dismiss. (*See* Opinion & Order (Jan. 8, 2018) ("Jan. 8, 2018 Opinion") (Dkt. No. 86).) The Court dismissed Plaintiff's retaliation and due process claims against Defendants Jackson, Ortiz, Shibah, Donahue, George, and O'Cana with prejudice as time-barred and barred by the collateral estoppel doctrine. (*Id*. at 19, 24, 29.) Plaintiff's retaliation claim against Grant was also dismissed, but without prejudice. (*Id*. at 25–26.) Plaintiff's retaliation claims as to Paroline survived. (*Id*. at 29.)

On February 16, 2018, Plaintiff filed a Second Amended Complaint. (*See* SAC.) On February 28, 2018, the Court granted the remaining Defendants request for an extension to answer the SAC. (Dkt. No. 90.) On March 23, 2018, Defendants submitted a pre-motion letter

requesting permission to file a Motion for Summary Judgment. (*See* Letter from Assistant Attorney General Yan Fu, Esq., to Court (Dkt. No. 91).) On April 10, 2018, the Court granted Defendants' request and set a briefing schedule. (Dkt. No. 92.) On April 10, 2018, Plaintiff submitted a letter supplementing the SAC. (*See* Letter from Tiquan Davis to Court ("SAC Supp.") (Dkt. No. 93).)

On May 3, 2018, Defendants filed the instant Motion for Summary Judgment, accompanying papers and exhibits, and a Rule 56.1 Statement. (Not. of Mot.; Defs.' 56.1; Quick Decl.; Seguin Decl.; Defs.' Mem. Of Law. in Supp. of Mot. for Summ. J. ("Defs.' Mem.") (Dkt. No. 98).) That same day, on May 3, 2018, Defendants sent a Rule 56.2 notice to Plaintiff. (Dkt. No. 99.) On May 14, 2018, Plaintiff filed his Opposition to the Motion and a Declaration in support of his Opposition. (Pl.'s Mem.; Pl.'s Decl.) Plaintiff did not file a response to Defendants' Rule 56.1 Statement. On June 29, 2019, Defendants filed a reply. (Defs.' Reply Mem. of Law in Further Supp. of Mot. for Summ. J. ("Defs.' Reply") (Dkt. No. 103).)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the

movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).  However, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'"  *DiStiso*, 691 F.3d at 230 (quoting Fed. R. Civ. P. 56(c)(4)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at  344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  And, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing

party's pro se status" (italics omitted)). "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (alterations, italics, and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

## B. Analysis

Defendants argue that the Court should grant summary judgment in their favor because Plaintiff failed to exhaust his available administrative remedies as required by the PLRA. (Defs.' Mem. 1, 4–7.) Plaintiff counters that he "followed all the requirements needed to satisf[y] the exhaustion prongs of the PLRA" and that "[t]he fact that there is no record on file is not due to the [P]laintiff not filing his grievance or appeals, and [that] he should not be faulted because of such." (Pl.'s Mem. 1–2.)

### 1. Applicable Law

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citation and some quotation marks omitted). The exhaustion requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 520, 532 (2002), and includes actions for monetary damages even if

12

monetary damages are not available as an administrative remedy, *see Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations, alterations, and quotation marks omitted). Indeed, the PLRA demands "strict compliance with the grievance procedure . . . , or else dismissal must follow inexorably." *McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (citations, alteration, and quotation marks omitted). Exhaustion must occur *prior* to Plaintiff's filing suit; "[s]ubsequent exhaustion after suit is filed therefore is insufficient." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001).

The PLRA contains a "textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. "[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* Available "grievance procedures . . . are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (citation and quotation marks omitted). In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* An administrative remedy is unavailable: (1) where "it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *id.* (citation omitted); (2) where the procedure is "so opaque that it becomes, practically speaking, incapable of use" such that "no ordinary prisoner can discern or navigate it," *id.*; or (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," *id.* at 1859–60. It bears noting, however, that the "three circumstances discussed in *Ross* do not appear to be exhaustive," *Williams*, 829 F.3d at 123 n.2 (declining to opine on "what other circumstances might render an otherwise available administrative remedy

13

actually incapable of use"), but rather "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (citation omitted).

"[I]t is well settled that conclusory allegations of intimidation are not sufficient to create a genuine disputed issue of fact regarding the availability of administrative remedies." *Khudan*, 2016 WL 4735364, at *6 (citations, quotation marks, and alterations omitted); *see also Heyliger v. Gebler*, No. 06-CV-6220, 2014 WL 4923140, at *3 (W.D.N.Y. Sept. 30, 2014) (granting summary judgment, notwithstanding the plaintiff's testimony that his "original grievance was discarded by prison officials," where he "never described or named the individual who allegedly took this action"), *aff'd*, 624 F. App'x 780 (2d Cir. 2015); *Litchmore v. Williams*, No. 11-CV-7546, 2013 WL 3975956, at *6 (S.D.N.Y. Aug. 5, 2013) (granting summary judgment where there was "no evidence" that the "plaintiff's appeal was actually mailed, intercepted, or ignored" and no "evidence of any particular officer's misconduct"); *Rosado v. Fessetto*, No. 09-CV-67, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) ("Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."), *report and recommendation adopted*, 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (granting summary judgment where, "[e]ven assuming the [plaintiff] did submit the grievances," he "offer[ed] no evidence that any particular officer thwarted his attempts to file," and instead, "simply contend[ed] that the practice of destroying or misplacing grievances must have been the cause of his grievances being lost"), *aff'd*, 178 F. App'x 39 (2d Cir. 2006). Finally, failure to exhaust is an affirmative defense, not a pleading requirement. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013). As such, Defendants bear the burden of proving failure to exhaust. *See McCoy*, 255 F. Supp. 2d at 248.

## 2.  Application

The grievance program applicable here is the DOCCS IGP, which provides for a three-step grievance process.  *See Colon v. Annucci*, No. 17-CV-4445, 2018 WL 4757972, at *17 (S.D.N.Y. Sept. 28, 2018); *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *6 (S.D.N.Y. Sept. 28, 2018).

> To initiate the process, an inmate must file a written complaint with the [IGRC], a facility committee composed of inmates and appointed staff members.  *See* N.Y.C.R.R. § 701.4–5. . . . Second, the inmate can appeal an unfavorable IGRC determination to the superintendent of the facility.  *See* [] N.Y.C.R.R. § 701.5(c)[].  Finally, an inmate can appeal an unfavorable superintendent's determination to []CORC[].  *See* [] N.Y.C.R.R. § 701.5(d) []; Directive No. 4040.

*Amador v. Andrews*, 655 F.3d 89, 97 (2d Cir. 2011) (alterations and quotation marks omitted); *see also Khudan*, 2016 WL 4735364, at *1 (describing three-step IGP procedure).  Grievances alleging misconduct by staff are subject to an expedited administrative review—they are immediately referred to the superintendent of the facility and must also be exhausted through a final appeal to CORC.  *Amador*, 655 F.3d at 97 (citing 7 N.Y.C.R.R. § 701.8.).  Only after completing all three steps of the IGP may an inmate initiate suit, *see Ross*, 136 S. Ct. at 1856; *Williams*, 829 F.3d at 122, "provided no exception to exhaustion applies," *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *6 (S.D.N.Y. Dec. 21, 2018).

### a.  The March 2014 and the August 8, 2015 Incidents

Plaintiff's SAC summarily states that "Plaintiff has exhausted all the herein claims at Sing Sing and Southport Correctional Facilities."  (SAC at 1.)  Plaintiff has submitted no evidence, other than his own unsworn Declaration, that relates to his filing of grievances or his appeal of unfavorable determinations.

Plaintiff only filed one grievance related to the misconduct alleged in this case, namely the 55380-15 Grievance, which related to the August 4, 2015 Paroline incident.  Records show

that while Plaintiff filed other grievances while at Sing Sing between 2014 and 2017, none involved the misconduct alleged in this case.  (Quick Decl. ¶¶ 6–7, 12; Plaintiff's Sing Sing Grievance Record.)  Neither Plaintiff's Declaration, nor any of his other submissions, mentions filing a grievance for the March 2014 Grant incident or the August 8, 2015 Paroline incident. Moreover, records show that Plaintiff did not appeal the 55380-15 Grievance.  Plaintiff's only appeal between 2012 and 2016 involved television programming.  (Plaintiff's CORC Grievance Record at 3.)  Plaintiff offers no evidence whatsoever with respect to the March 2014 Grant incident or the August 8, 2015 Paroline incident, and has thus failed to "come forward with admissible evidence sufficient to raise a genuine issue of fact."  *CILP Assocs., L.P.*, 735 F.3d at 123.  Accordingly, Defendants have "adequately supported the affirmative defense of failure to exhaust."  *See, e.g.*, *Bennett v. Onua*, No. 09-CV-7227, 2010 WL 2159199, at *3 (S.D.N.Y. May 26, 2010) (finding that defendants discharged their initial burden on summary judgment by producing affidavits that a search of prison records indicated that no grievances were ever filed); *see also Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656–57 (2d Cir. 2009) (affirming grant of summary judgment where the "plaintiffs rel[ied] almost exclusively upon" their "speculative" and "vague" testimony in the face of the defendants' documentary evidence); *Toro v. City of New York*, No. 12-CV-4093, 2015 WL 1014044, at *5 (E.D.N.Y. Mar. 6, 2015) (granting summary judgment where "there is no evidence—beyond the allegations in his complaint and his own unsupported deposition testimony—that the [plaintiff] actually reported such misconduct to the authorities").

Nor does any exception to exhaustion apply.  Plaintiff makes no showing whatsoever that the IGP is "unable" to provide relief to grievances, or that prison officials are "consistently unwilling" to provide relief, or that he has been "thwart[ed] . . . from taking advantage" of the

IGP "through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60.

Nor can Plaintiff show that the IGP is "so opaque that it [is] . . . incapable of use," *id.* at 1859,

given that Plaintiff successfully used the IGP, filing eight grievances while at Sing Sing between

2014 and 2017, (Defs.' 56.1 ¶ 10), appealing 39 grievances to CORC since he has been in prison,

(Seguin Decl. ¶ 6, Plaintiff's CORC Grievance Record at 3), and having served as a grievance

representative himself, (Pl.'s Decl. ¶ 6). *See, e.g.*, *Mckinney v. Prack*, 170 F. Supp. 3d 510, 516–

17 (W.D.N.Y. 2016) (finding that the plaintiff failed to present a question of fact as to whether

the grievance process was available to him where the record showed the plaintiff appealed and

exhausted 20 grievances during his 29 years of incarceration including four during the relevant

period); *Taylor v. Thames*, No. 09-CV-72, 2010 WL 3614189, at *4 (N.D.N.Y. July 22, 2010)

(finding that the plaintiff failed to present a question of fact as to whether the grievance process

was available to him where the record showed he "utilized the administrative procedure over

twenty times in the twenty-eight months [he] was incarcerated"). Moreover, here, Plaintiff

makes no allegations in his SAC or his Declaration that anyone or anything prevented him from

filing grievances related to these two incidents.

The Court concludes that Plaintiff failed to complete any of the steps of the IGP with

respect to the March 2014 Grant incident or the August 8, 2015 Paroline incident, and that no

exception to the exhaustion requirement applies.

### b. The August 4, 2015 and October 31, 2015 Incidents

Defendants admit that Plaintiff filed a grievance on August 13, 2015, namely the 55380-

15 Grievance, (Defs.' 56.1 ¶ 5), that related to the August 4, 2015 Paroline incident. (*Id.* ¶ 6.)

Plaintiff's grievance was ultimately denied on September 3, 2015. (*Id.* ¶ 8.) Defendants

presented admissible evidence that Sing Sing has no record of any appeal by Plaintiff of the

denial of grievance 55380-15 to CORC. (Seguin Decl. ¶ 6, Plaintiff's CORC Grievance Record at 3.) In the section of Plaintiff's Declaration where he addresses Paroline, Plaintiff claims that after he received his "response from the superintendent," which the Court takes to mean the September 3, 2014 denial of the grievance, he "wrote [his] appeal out for CORC . . . and was personally able to hand [his] appeal to the grievance sgt who told [him] that they would make sure [his] appeal got filed." (Pl.'s Decl. ¶ 4.) Plaintiff claims he has still not heard from CORC regarding his appeal. (*Id*.)

Defendants deny that Plaintiff ever filed a grievance related to the October 31, 2015 Grant incident. Defendants submitted evidence outlining what grievances Plaintiff filed between 2014 and 2017, and the October 31, 2015 Grant incident was not among them. (Defs.' 56.1 ¶¶ 10–11; Sing Sing Grievance Record.) Plaintiff counters in his Declaration that on October 31, 2015, he wrote a harassment and retaliation grievance and gave this grievance to the B-block IGRC representative to file. (Pl.'s Decl. ¶ 2.) Plaintiff then followed up repeatedly with the representative who told him he would check with the IGP supervisor and who assured Plaintiff the IGP would get back to him. (*Id*.) Plaintiff claims that the representative then suggested to Plaintiff that he appeal it to the CORC, and that Plaintiff drafted his appeal "that night," included a copy of his original grievance dated October 31, 2015, and gave it to the representative the next morning. Plaintiff claims he has still not heard anything regarding this grievance. (*Id*.)

In this case, Defendants have met their initial burden of demonstrating that Plaintiff failed to exhaust his retaliation claims. Defendants submitted admissible evidence showing that there is no record of Plaintiff filing a grievance regarding the October 31, 2015 incident, and no record of Plaintiff filing an appeal regarding the August 4, 2015 incident. (*See generally* Plaintiff's Sing Sing Grievance Record; Plaintiff's CORC Grievance Record.) Plaintiff maintains that,

notwithstanding the lack of any record, he did file a grievance regarding Grant's October 31, 2015 retaliation, (Pl.'s Decl. ¶ 2), and that he did appeal the denial of his grievance regarding Paroline's August 4, 2015 retaliation, (*id.* ¶ 4).

The Court takes Plaintiff's assertions that his grievances and appeals were lost or not properly processed as an argument that the grievance process was unavailable to him, either because the process "operates as a simple dead end," was "practically speaking, incapable of use," or because "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1858–60.

"Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact." *Engles v. Jones*, No. 13-CV-6461, 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) (granting summary judgment to defendants for failure to exhaust where defendants demonstrated through admissible evidence that there was no record of the plaintiff filing his grievance and where the plaintiff merely alleged without any documentary support that his grievance was lost or destroyed); *see also Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) ("[C]ourts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."); *Mims v. Yehl*, No. 13-CV-6405, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014) (holding that inmate's "unsupported statement" that he has submitted a grievance is "insufficient at the summary judgment stage"); *Khudan*, 2016 WL 4735364, at *5 (granting summary judgment to defendants where the plaintiff asserted he filed his grievance with the IGRC, received no response, and then sent an appeal to "Albany," because the "[p]laintiff's self-serving and incomplete testimony . . . is insufficient to create a genuine dispute of fact, particularly in light of [d]efendants' evidence that no grievance was ever sent" (quotation marks

and alterations omitted)); *Rosado*, 2010 WL 3808813, at *7 (granting summary judgment to defendants where the plaintiff alleged that he filed a grievance, did not receive an answer, thereafter sent two letters to the superintendent, because the plaintiff's claim that officials must have "messed with" his grievance and his letters was insufficient to excuse the exhaustion requirement and the plaintiff could have further appealed the grievance to CORC); *Veloz*, 339 F. Supp. 2d at 515–16 (granting summary judgment to defendants because the plaintiff failed to exhaust available administrative remedies where the plaintiff alleged that his grievances were misplaced or destroyed by corrections officers but there was no evidence that any grievance was filed and the plaintiff failed to offer "evidence that any particular officer thwarted his attempts to file").

It is true that courts in the Second Circuit have excused failure to exhaust where a plaintiff identified an officer or officers who took some specified action to prevent the plaintiff from filing a grievance, *see Lopez v. Bushey*, No. 11-CV-0418, 2013 WL 1294477, at *6 (S.D.N.Y. Mar. 4, 2013) (denying summary judgment because pro se plaintiff raised a triable issue of fact that special circumstances justified his failure to exhaust his administrative remedies where he named a specific officer and alleged that officer repeatedly tore up his grievances before he could file them); *Gill v. Frawley*, No. 02-CV-1380, 2006 WL 1742738, at *8–9 (N.D.N.Y. June 22, 2006) (denying summary where plaintiff named three officers to whom he submitted his grievances and attached copies of correspondences with those officers in which they assured him his grievances had been submitted, and where defendants failed to submit admissible evidence that plaintiff had not filed the grievances at issue), or threatened the plaintiff for attempting to file a grievance, *see Hubbs v. Suffolk County Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (holding that "administrative remedies may . . . be deemed unavailable if the

plaintiff can demonstrate . . . threats from correction officers—rendered a nominally available procedure unavailable"); *Grafton v. Hesse*, No. 15-CV-4790, 2017 WL 9487092, at *7 (E.D.N.Y. Aug. 25, 2017) (finding that "specific threats of retaliation or intimidation by prison officials may render administrative remedies unavailable").  Here, however, Plaintiff offers no evidence that any particular officer thwarted his attempts to file his grievance or appeal.  Plaintiff also does not allege that anyone threatened him.  Instead, Plaintiff claims that he filed his October 31, 2015 grievance and appeal with the "B-block IGRC representative," (Pl.'s Decl. ¶ 2), and that he handed his August 4, 2015 appeal directly to the "grievance sgt," (*id.* ¶ 4).  Putting aside that Plaintiff does not provide enough information about these officers to clearly identify them, he does not allege they destroyed his papers or attempted to keep him from filing them.  (*Id.* ¶¶ 2, 4.)  Plaintiff does not even expressly allege that his submissions were lost—he summarily states that it is not his fault that there is no record of his papers having been filed. (Pl.'s Mem. 1–2.)

    Courts in the Second Circuit have also held that administrative remedies are unavailable in extraordinary circumstances where, for example, an inmate must rely on prison officials to submit his grievance.  *See Williams*, 829 F.3d at 122 (reversing dismissal of case where plaintiff was in a special housing unit segregated from the regular prison population, gave his grievance to a correction officer to file, and that officer failed to file it, because the applicable grievance regulations "gave no guidance whatsoever" to a prisoner in plaintiff's position); *Rodriguez v. Cross*, No. 15-CV-1079, 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) (noting that "[c]ourts have denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU"); *Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *5 (S.D.N.Y. July 19, 2016) (finding that *Williams*, 829 F.3d 118, "hinged on the

'extraordinary circumstances' specific to the case before it").  Here, Plaintiff was not segregated from the regular prison population and does not allege or submit any evidence that he did not have access to the grievance process—he in fact admits repeatedly speaking to the grievance representative and handing his appeal to the grievance sergeant directly.  (Pl.'s Decl. ¶¶ 2, 4.) Instead, Plaintiff's bare assertions that he submitted his grievances but never received a response fall squarely into the category of assertions that courts in the Second Circuit have found do not excuse the exhaustion requirement.  "Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact."  *Engles*, 2018 WL 6832085, at *10; *see also Scott*, 298 F. Supp. 3d at 555 (holding that "an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement"); *Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722, at *6 (S.D.N.Y. Dec. 21, 2016) (finding that the IGP *does* contemplate the circumstance where a plaintiff merely alleges that he filed his grievance but never received a response because "the failure to render a timely decision at a lower level" is appealable "to the next level," and that this scenario is distinguishable from *Williams*, 829 F.3d 118, where the IGP did *not* contemplate the circumstances of a plaintiff in SHU).

Considering Plaintiff's statements, which "stand alone and unsupported," *Veloz*, 339 F. Supp. 2d at 516, along with the evidence Defendants have submitted showing there is no record of Plaintiff filing an appeal regarding the August 4, 2015 incident, or filing a grievance or appeal regarding the October 31, 2015 incident, (Defs.' 56.1 ¶¶ 9–12; Plaintiff's Sing Sing Grievance Record; Plaintiff's CORC Grievance Record), and evidence that Plaintiff has successfully used the IGP on 39 previous occasions, (*id*. ¶¶ 10, 13; Pl.'s Decl. ¶ 6), the Court concludes that no exception to the exhaustion requirement applies.

Because Plaintiff has failed to exhaust his available administrative remedies as to the

remaining four instances of retaliation he alleges in his SAC, the Court grants summary

judgment to Defendants on all remaining claims. *Khudan*, 2016 WL 4735364, at \*5 (granting

summary judgment to defendants because "[p]laintiff's self-serving and incomplete testimony

. . . is insufficient to create a genuine dispute of fact, particularly in light of [d]efendants'

evidence that no grievance was ever sent").

## III. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. The

Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 94), enter

judgment for Defendants, close this case, and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: February **8**, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE